UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

In re                                                                                     Chapter 7

      Tashanna B Golden,                                        Case No. 16-40809-ess
      fka Tashanna B Pearson,

          Debtor

-------------------------------------------------------------------x

Tashanna B Golden, fka Tashanna B Pearson, on
behalf of herself and all others similarly situated

          Plaintiff,                              Adv. Pro. No. 20-01051-ess

     -against-

Discover Bank,

          Defendant.

-------------------------------------------------------------------x

MEMORANDUM DECISION ON THE DEFENDANT'S
<u>MOTION TO COMPEL ARBITRATION AND TO DISMISS THE COMPLAINT</u>

*Appearances*:

George F. Carpinello, Esq.                    Clay Jackson Pierce, Esq.
Adam Shaw, Esq.                               Erin L. Hoffman, Esq.
Jenna Smith, Esq.                             Kyle Hosmer, Esq.
Boies Schiller Flexner LLP                    Brian P. Morgan, Esq.
30 South Pearl Street (11th Floor)            Faegre Drinker Biddle & Reath LLP
Albany, NY 12207                              1177 Avenue of the Americas
  *Attorneys for Plaintiff*                 New York, NY 10036
  *Tashanna B. Golden, fka Tashanna B.*       *Attorneys for Defendant*
  *Pearson, on behalf of herself and all others*   *Discover Bank*
  *similarly situated*

Jason W. Burge, Esq.
Kathryn J. Johnson, Esq.
Fishman Haygood, LLP
201 Saint Charles Avenue (Suite 4600)
New Orleans, LA 70170
  *Attorneys for Plaintiff*

*Tashanna B. Golden, fka Tashanna B.*
*Pearson, on behalf of herself and all others*
*similarly situated*

Joshua B. Kons, Esq.
50 Albany Turnpike (Suite 4024)
Canton, CT 06019
   *Attorneys for Plaintiff*
   *Tashanna B. Golden, fka Tashanna B.*
   *Pearson, on behalf of herself and all others*
   *similarly situated*

Austin C. Smith, Esq.
Smith Law Group LLP
99 Wall Street (No. 426)
New York, NY 10005
   *Attorneys for Plaintiff*
   *Tashanna B. Golden, fka Tashanna B.*
   *Pearson, on behalf of herself and all others*
   *similarly situated*

Lynn E. Swanson, Esq.
Jones, Swanson, Huddell & Garrison, LLC
601 Poydras Street (Suite 2655)
New Orleans, LA 70130
   *Attorneys for Plaintiff*
   *Tashanna B. Golden, fka Tashanna B.*
   *Pearson, on behalf of herself and all others*
   *similarly situated*

January 25, 2021

HON. ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE

Introduction

Before the Court is the motion to dismiss of defendant Discover Bank ("Discover"). Discover seeks an order referring the parties to arbitration with respect to the claims set forth in Tashanna Golden's complaint, and argues that the Federal Arbitration Act requires that this Court compel arbitration pursuant to an arbitration agreement between Discover and Ms. Golden.[1] Ms. Golden responds that compelling arbitration here would create an inherent conflict with the purposes and policies of the Bankruptcy Code, and for those reasons, the Court should not compel arbitration, and Discover's motion should be denied.

Jurisdiction

This Court has jurisdiction over this adversary proceeding pursuant to Judiciary Code Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.  In addition, this Court may adjudicate these claims to final judgment to the extent that they are core proceedings pursuant to Judiciary Code Section 157(b), and to the extent that they are not core proceedings, pursuant to Judiciary Code Section 157(c) because the parties have indicated their consent to this Court entering a final judgment.  *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1948 (2015) (holding that in a non-core proceeding, the parties' consent to the entry of a final order by a bankruptcy court may be express or implied).

---

[1]  In addition to an order directing this matter to arbitration, Discover seeks, as alternative relief, the dismissal of the class allegations in Ms. Golden's Complaint.  In this decision, the Court addresses only Discover's request to dismiss and compel arbitration of Ms. Golden's claims.

Background

*Ms. Golden's Bankruptcy Case*

On February 29, 2016, Tashanna Golden, *fka* Tashanna B. Pearson, filed a petition for relief under Chapter 7 of the Bankruptcy Code.  Case No. 16-40809.  On July 28, 2016, the Chapter 7 Trustee filed a "no-asset" report stating that "there is no property available for distribution from the estate over and above that exempted by law."  Case No. 16-40809, Doc. entry dated July 28, 2016.  On August 3, 2016, the Court entered an order discharging Ms. Golden (the "Discharge Order"), and on that same day, her bankruptcy case was closed.  On December 6, 2016, Ms. Golden filed a motion to reopen her bankruptcy case to obtain a determination of the dischargeability of certain of her student loans, and on January 10, 2017, the Court entered an order reopening the case.

*This Adversary Proceeding*

On May 12, 2020, Ms. Golden commenced this adversary proceeding as a putative class action, on behalf of herself and others similarly situated, by filing a complaint against Discover seeking a determination that certain debts that she incurred as a student are not nondischargeable student loan debts under Bankruptcy Code Section 523(a)(8)(B), and a finding of contempt against Discover for civil contempt for willful violations of the bankruptcy discharge injunction. Compl., Adv. Pro. No. 20-01051, ECF No. 1.

*The Complaint*

Ms. Golden alleges that Discover has knowingly "appropriated a legal presumption for a class of debt" – including certain loans that she took out while she was a student at the University of Pennsylvania Law School – that it knows is not entitled to a presumption of nondischargeability.  Compl. ¶ 1.  She claims that Discover knowingly misled her and other

student debtors about the nature of these obligations.  Ms. Golden advances these allegations on behalf of an alleged class of similarly situated individuals who have declared bankruptcy since 2005 across the United States, with loans originated or serviced by Discover.  And Ms. Golden alleges that certain of the debts that she incurred in connection with her law school education are not nondischargeable student loans under Bankruptcy Code Section 523, and that Discover violated the discharge injunction entered in her bankruptcy case by seeking to collect on these debts after she received her bankruptcy discharge.

In her bankruptcy petition, Ms. Golden listed on her Schedule E/F certain "student loans" that she owes, including the loans described in the Complaint, that Discover made to her in excess of the University of Pennsylvania Law School's published cost of attendance for the 2006-07 academic year.  Compl. ¶ 29.  She alleges that these loans are not nondischargeable student loans or conditional educational grants under Bankruptcy Code Section 523(a)(8).  And Ms. Golden alleges that on or about August 3, 2016, she received a discharge, and on or about August 5, 2016, her creditors likewise "received notice of discharge."  Compl. ¶ 32.

Ms. Golden alleges that rather than treat these debts as discharged, as required by bankruptcy law, Discover resumed its collection efforts after she received a discharge.  She argues that Discover "fraudulently informed [her] that the [d]ebts were not discharged and demanded . . . and accepted payment."  Compl. ¶ 33.  Ms. Golden alleges that the "Defendant's abusive, deceptive and illegal collection efforts after Golden's Debts were discharged were made knowingly and willfully in violation of this Court's discharge orders."  Compl. ¶ 34.

Ms. Golden alleges that Discover and other creditors represented to her and to similarly situated student debtors that the Bankruptcy Code prohibited discharge of "*any* loan made to any person for any educational purpose," when they knew that "only private loans that meet the

requirements of section 523(a)(8)(B) [are] nondischargeable." Compl. ¶ 19. She claims that

Discover "failed to disclose facts and information that would inform debtors of the fact that

private loans were only non-dischargeable if they met the requirements of section 523(a)(8)(B),

and . . . that debtors' non-qualified loans were, in fact, discharged in bankruptcy." Compl. ¶ 20.

Ms. Golden requests a declaratory judgment, pursuant to Judiciary Code Section 2201

and Bankruptcy Rule 7001(9), that her debts were discharged by operation of law on August 3,

2016, the date of her bankruptcy discharge, because they are not student loans excluded from

discharge under Section 523(a)(8). Ms. Golden claims that since Discover was notified of the

Discharge Order pursuant to Bankruptcy Rule 4004(g) and still sought to collect on her debts by

use of dunning letters, e-mails, text messages, and telephone calls, the Court should cite Discover

for civil contempt and order it to pay damages in an amount to be determined at trial for willful

violations of the Discharge Order and Bankruptcy Code Section 524, and also to pay her

attorneys' fees and costs.

_This Motion To Compel Arbitration and To Dismiss this Case Without Prejudice_

On July 13, 2020, Discover moved to compel arbitration of Ms. Golden's claims and

dismiss this case, or, in the alternative, to dismiss or strike Ms. Golden's class allegations (the

"Motion to Compel Arbitration"), and filed a memorandum of law in support (the "Def's Mem.")

along with a Declaration of Arthur Page (the "Page Declaration"). Discover argues that the

promissory note that established the terms of the loan at issue, referred to as the "2006 Loan,"

contains an "exceedingly broad" arbitration agreement (the "Arbitration Agreement"). Def's

Mem. at 4, ECF No. 7. And according to Discover, that agreement to arbitrate includes "claims

'based on any theory of law, any contract, statute, regulation, . . . constitutional provision . . . or

any other legal or equitable ground.'" Def's Mem. at 3-4 (quoting Page Declaration Exh. D at

13-14, ECF No. 8).  It also authorizes either party to bring an action to compel arbitration "'in any court having jurisdiction.'"  Def's Mem. at 5 (quoting Page Declaration Exh. D at 6).

Discover argues that the Federal Arbitration Act (the "FAA") mandates enforcement of the Arbitration Agreement because the FAA governs written arbitration provisions in any "contract evidencing a transaction involving commerce."  Def's Mem. at 9 (quoting 9 U.S.C. § 2).  Discover explains that the 2006 Loan pertains to commerce because it is a student loan account, issued by a national bank, acquired by another national bank, and used by a New York resident.  It also argues that "[a]rbitration 'should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"  Def's Mem. at 9 (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  Therefore, according to Discover, the Court should enforce the Arbitration Agreement as written because Ms. Golden does not dispute the "validity, irrevocability, or enforceability" of her arbitration agreements.  Def's Mem. at 10.

Discover argues that an agreement to arbitrate applies with full force to statutory claims, absent a clear statutory directive disfavoring arbitration of a particular statutory claim.  It also argues that a party arguing that the Bankruptcy Code overrides the FAA "'bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow.'"  Def. Mem. at 11 (quoting *Epic Systems Corp. v. Lewis*, 584 U.S. ___, 138 S. Ct. 1612, 1624 (2018)).  Discover argues that the Supreme Court has established two tests for evaluating whether a statute expresses a congressional intent to override the FAA:  "first, whether that contrary congressional command is 'deducible from [the statute's] text or legislative history'; and second, whether 'an inherent conflict between arbitration and the statute's underlying

purposes' exists."  Def's Mem. at 11 (quoting *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987)).

Discover acknowledges that the Second Circuit has issued two recent decision, *Belton v. GE Capital Retail Bank* (*In re Belton*), 961 F.3d 612 (2d Cir. 2020), and *Anderson v. Credit One Bank, N.A.* (*In re Anderson*), 884 F.3d 382 (2d Cir. 2018), which hold that there is an "inherent conflict" between the FAA and the Bankruptcy Code and, therefore, agreements to arbitrate claims asserted in bankruptcy court should not be enforced.  Def's Mem. at 11.  It also "recognizes that this argument is supported by decisions of this Court in parallel bankruptcy cases."  Def's Mem. at 2.  Nevertheless, Discover "fundamentally disagrees" with the Second Circuit's decisions in *Belton* and *Anderson*, and "sets forth its arguments on this subject to preserve them for future appellate review."  Def's Mem. at 11-12.

Discover argues that there is no basis to conclude that Congress intended to shield bankruptcy adversary claims from the FAA because the Bankruptcy Code is silent on whether discharge violation claims are exempt from the FAA.  It points to the Supreme Court's decision in *Epic Systems*, which states that "'the absence of any specific statutory discussion of arbitration or class actions is an important and telling clue that Congress has not displaced the Arbitration Act.'"  Def's Mem. at 12 (quoting *Epic Systems Corp.*, 138 S. Ct. at 1627).  And therefore, according to Discover, "[b]ecause Congress did not include any provision in the Bankruptcy Code excluding discharge-violation claims from the reach of the FAA, both statutes strongly support the enforcement of the parties' agreement to arbitrate Plaintiff's claims on an individual, non-class basis."  Def's Mem. at 12.

Discover also relies upon the Supreme Court's decision in *Epic Systems* to support its position that the "inherent conflict" test no longer applies when determining whether the FAA

conflicts with another federal statute.  Discover argues that in that case, the Supreme Court examined whether the National Labor Relations Act overrode the presumption of arbitrability under the FAA.  And Discover argues that in *Epic Systems*, the Supreme Court found "that the NLRA does not prohibit arbitration clauses in employment agreements, including those that include class action waivers, notwithstanding the NLRA's avowed purpose of protecting employees' rights to collectively bargain."  Def's Mem. at 13 (citing *Epic Systems Corp.*, 138 S. Ct. at 1632).  Discover argues that the Supreme Court looked at the language of the statute and the history to determine that claims under the NLRA are arbitrable.  It argues that in its decision, the Supreme Court "noted the 'Court has heard and rejected efforts to conjure conflicts between the Arbitration Act and other federal statutes'" and  that "the Court has never found a conflict between the FAA and any other federal statute."  Def.s Mem. at 13 (quoting *Epic Systems Corp.*, 138 S. Ct. at 1627).

Discover also argues that the Supreme Court's decisions in *American Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) and *CompuCredit Corp. v. Greenwood*, 565 U.S. 95 (2012) support its position that the inherent conflict test is no longer applicable.  It argues that in those cases, even though the parties explicitly addressed the "inherent conflict" test in their briefs, the Supreme Court did not discuss that test.  And Discover argues that in both cases, the Supreme Court determined that the FAA required the parties' arbitration agreement to be enforced.  Def's Mem. at 14.  Additionally, it argues that that the Supreme Court has addressed the "inherent conflict" test only twice since *McMahon* was decided thirty-three years ago, in *Preston v. Ferre*r, 552 U.S. 346, 356 (2008) and *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-26 (1991).  Therefore, Discover argues, this Court should not follow the Second

Circuit's decisions in *Anderson* and *Belton*, and instead, should enforce Ms. Golden's agreement to arbitrate her claims.

Discover further argues that even if the "inherent conflict" test applies here, there is no inherent conflict between the FAA and the Bankruptcy Code.  It argues that violations of a discharge order are not so unique that only a bankruptcy court can resolve them because Congress did not grant bankruptcy courts original or exclusive jurisdiction.  And Discover argues that in *Belton*, the Second Circuit acknowledged that other adjudicatory bodies can, and often do, resolve bankruptcy matters.  As an example, it points to the Second Circuit's observation in *Belton* that "'state courts have concurrent jurisdiction to enforce the discharge injunction as an affirmative defense in collection suits.'"  Def's Mem. at 15 (quoting *Belton*, 961 F.3d at 916).  It urges that bankruptcy matters are often arbitrated, including the dischargeability of debts.  Def's Mem. at 16.

Discover argues that the Supreme Court has established that "finding no conflict between the FAA and another federal statute with important policy goals does not 'override Congress's policy judgments.'"  Def's Mem. at 16 (quoting *Epic Systems Corp.*, 138 S. Ct. at 1631).  It urges that, as the Supreme Court observed, courts should "'seek[] to honor' Congress's policy judgments."  *Id.*  And Discover notes that "precedent 'demonstrate[s] that even claims arising under a statute designed to further important social policies may be arbitrated because so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute serves its functions.'"  Def's Mem. at 16 (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) (internal quotation omitted)).

Discover argues that, as with numerous other federal statutory claims that the Supreme Court has found were appropriate for arbitration, there is no reason to believe that arbitration of

Ms. Golden's discharge violation claims inherently conflicts with the purposes of the Bankruptcy Code.  Rather, it urges that an arbitrator has the authority under Ms. Golden's arbitration agreements to award the same relief that she seeks from this Court.

Finally, Discover argues that because Ms. Golden must arbitrate her claims, this adversary proceeding should be dismissed.  Citing decisions from courts outside this Circuit, it argues that dismissal is appropriate under the FAA where all of the plaintiff's claims were subject to arbitration.  And it argues that the Second Circuit has held that the FAA requires a stay of proceedings when all claims are referred to arbitration and a stay is requested.  Def's Mem. at 17 (citing *Katz v. Cellco P'ship*, 794 F.3d 341, 343 (2d Cir. 2015)).  Discover argues that here, "a stay would serve no purpose" and that any party is free to file a petition in this Court at the conclusion of arbitration seeking to confirm or vacate the arbitration award.  Def's Mem. at 18 (citing 9 U.S.C. §§ 9, 10).  Alternatively, if the case is not dismissed, Discover seeks a stay pending the conclusion of arbitration.

Ms. Golden opposes the arbitration of her claims.  On August 11, 2020, Ms. Golden filed a memorandum of law in opposition (the "Plf's Opp.") to the arguments raised in the Motion to Compel Arbitration, as well as the motion to dismiss the class allegations in her Complaint.  ECF No. 9.

Ms. Golden responds that "[i]t is now well-established by the Court of Appeals and by this Court that a proceeding to declare a creditor's conduct in violation of the discharge order and § 524 of the Bankruptcy Code should not be referred to arbitration."  Plf.'s Opp. at 2 (citing cases).  Ms. Golden argues that the Firth Circuit has agreed with the Second Circuit that adjudication of a discharge violation is not appropriate for arbitration.  Nov. 10, 2020 Hrg. Tr. 17:10-15, ECF No. 16.  And she argues that the Supreme Court's decision in *McMahon* was not

overturned by *Epic Systems* and remains valid law.  Nov. 10, 2020 Hrg. Tr. 18:1-5.  For these

reasons, she argues, there is an unequivocal inherent conflict between the Bankruptcy Code and

the FAA.  Nov. 10, 2020 Hrg. Tr. 18:11-12.

Ms. Golden also responds that the Supreme Court authority cited by Discover does not

involve violations of a court order and a motion for contempt.  Nov. 10, 2020 Hrg. Tr. 19:4-8.

She argues that a determination that the FAA requires this matter to be sent to arbitration would

effectively strip the Court of its ability to enforce its own order.  Nov. 10, 2020 Hrg. Tr. 19:9-12.

And she argues that an arbitrator would then have the power to enforce a court's order, even if

the particular arbitrator is not an attorney, or lacks a bankruptcy background.  Nov. 10, 2020

Hrg. Tr. 19:13-15.  She argues that such a result would diminish the integrity of the bankruptcy

court's order, because creditors that violate a debtor's discharge injunction would know that

rather than appear in front of a judge, they could select an arbitrator who lacks the experience to

determine a proper remedy.  Nov. 10, 2020 Hrg. Tr. 19:20-20:9.

On September 23, 2020, Discover filed a reply (the "Reply") in further support of their

Motion to Compel Arbitration.  ECF No. 12.  Discover addresses principally Ms. Golden's

opposition to its request to strike the class allegations from the Complaint.  In that context,

Discover states that "[e]very circuit court of appeals to have considered the issue has concluded

that the only adjudicatory body able to interpret and enforce a debtor's discharge order is the

court that issued the order."  Reply at 1.  And it states that there are "numerous non-bankruptcy

cases finding that claims for contempt may be heard only by the court that issued the underlying

order."  Reply at 4 (citing cases).

On November 10, 2020, the Court heard arguments on the Motion to Compel Arbitration,

at which Ms. Golden and Discover appeared and were heard, and the Court closed the record.

<u>Discussion</u>

In order to determine whether the Court should compel arbitration of Ms. Golden's claims, the Court must answer two questions:  first, whether this proceeding is core or non-core; and second, whether arbitration of these claims would present a severe, inherent conflict with, or necessarily jeopardize the objectives of, the Bankruptcy Code.

<u>Whether this Proceeding Is Core or Non-Core</u>

One key piece of the picture in determining whether Ms. Golden's discharge injunction violation claim should be referred to arbitration is the scope of and boundary between core and non-core proceedings.  Congress has outlined a non-exhaustive list of many of the matters that are considered "core" proceedings under the bankruptcy law.  28 U.S.C. § 157.  These include matters concerning the administration of the estate, determinations as to the dischargeability of particular debts, and objections to a debtor's discharge, among others.  As the Supreme Court has observed, Bankruptcy Code Section 157 is a "nonexclusive list . . . in which . . . bankruptcy courts could constitutionally enter judgment."  *Wellness,* 135 S. Ct. at 1940.

To similar effect, courts have outlined three categories of proceedings in which bankruptcy courts may exercise jurisdiction:  proceedings arising under the Bankruptcy Code, proceedings arising in a case under the Bankruptcy Code, and those related to a case under the Bankruptcy Code.  "Proceedings 'arising under title 11, or arising in a case under title 11,' are deemed 'core proceedings.'"  *Elliott v. Gen. Motors LLC* (*In re Motors Liquidation Co.*), 829 F.3d 135, 153 (2d Cir. 2016), *cert. denied sub nom. Gen. Motors LLC v. Elliott*, 137 S. Ct. 1813 (2017) (quoting *Stern v. Marshall,* 564 U.S. 462, 476 (2011)).  And as the Second Circuit observed, "[p]roceedings that are 'core' are those that involve 'more pressing bankruptcy concerns.'"  *Anderson,* 884 F.3d at 388 (quoting *United States Lines, Inc. v. Am. Steamship*

*Owners* (*In re United States Lines, Inc.*), 197 F.3d 631, 640 (2d Cir. 1999)).  "It is clear and undisputed that the dischargeability of debt is a matter that arises only under a federal statute [and] dischargeability of debt is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I)."  *Trinity Christian Ctr. v. Koper* (*In re Koper*), 516 B.R. 707, 719 (Bankr. E.D.N.Y. 2014).  *See Roberts v. Spencer* (*In re Spencer*), 168 B.R. 142, 145 (Bankr. N.D. Tex. 1994) (observing that "[i]t is clear from [28 U.S.C. § 157(b)(2)(I)] that bankruptcy courts are to hear and determine the dischargeability of particular debts."); *Haden v. Edwards* (*In re Edwards*), 104 B.R. 890, 895 (Bankr. E.D. Tenn. 1989) (asserting that "[p]roceedings to determine the dischargeability of debts or in opposition to the debtor's discharge . . . are clearly core proceedings.").

In the Complaint, Ms. Golden alleges, among other things, that certain of her student loans "are not non-dischargeable student loans or conditional educational grants under section 523(a)(8)," and that Discover violated the Court's discharge injunction imposed by Bankruptcy Code Section 524 by seeking to collect on these obligations.  Compl. ¶ 30.  In particular, Ms. Golden alleges that certain "student loans" made to her in excess of the University of Pennsylvania Law School's cost of attendance for the two relevant academic years are outside the scope of Bankruptcy Code Section 523(a)(8)'s discharge exception.  And she alleges that Discover "resumed collection efforts after [the Court entered a discharge injunction], and fraudulently informed the debtor that the [d]ebts were not discharged."  Compl. ¶ 33.

Discover argues that arbitration is nevertheless appropriate because this dispute is, in substance, a contract dispute.  And Discover argues that the FAA stands for the proposition that arbitration is a matter of contract, Ms. Golden's allegations fall squarely within their Arbitration Agreement, and that contract term should be enforced by sending this matter to arbitration.

Ms. Golden responds, in substance, that viewing these claims strictly as a contract dispute within the scope of the parties' arbitration agreement, and compelling arbitration of this matter, fundamentally mischaracterizes the core bankruptcy nature of her claims, and threatens to impair this Court's power to enforce its own injunction.

Here, a review of the allegations and claims for relief set forth in the Complaint makes plain that Ms. Golden's allegations are grounded in the determination of whether the debts at issue were discharged in her bankruptcy case, and if so, whether the bankruptcy court's discharge order has been violated. They are not contract claims, and they do not arise solely from the violation of a statutory right. Rather, they address the alleged knowing violation of a court order. For example, she alleges that her debts were discharged pursuant to the Court's Discharge Order "because they were unsecured consumer loans and not non-dischargeable student loans under section 523(a)(8)," and that the "Defendant nonetheless sought to collect on the Debts by use of dunning letters, e-mails, text messages, and phone calls . . . in violation of 11 U.S.C. § 524." Compl. ¶¶ 62, 64. That is, the claims here concern, and seek the enforcement of, a court order – which is fundamentally different from a contract dispute.

And a review of the applicable law makes it equally plain that the questions of the dischargeability of a debt, and whether the bankruptcy discharge has been violated, are core proceedings. As a starting point for this analysis, Judiciary Code Section 157(b)(2)(I) states that "determinations as to the dischargeability of particular debts" are core proceedings. In addition, courts have consistently held that the dischargeability of debt is a matter that arises only under a federal statute. *In re Koper*, 516 B.R. at 719. Similarly, Ms. Golden's request to hold Discover in contempt for violations of the discharge injunction is a matter that arises under the Bankruptcy

Code, and is therefore a core proceeding.  And again, the asserted violations are not violations of a contract term, but of a court order.

For these reasons, the Court finds that Ms. Golden's claims for a determination that certain of her debts were discharged by operation of law because they are not student loans excluded from discharge under Bankruptcy Code Section 523(a)(8), and that Discover violated the Discharge Order, are core matters.  *See Golden v. JP Morgan Chase Bank* (*In re Golden*), 587 B.R. 414 (Bankr. E.D.N.Y. 2018); *Homaidan* v. SLM Corp. (*In re Homaidan*), 587 B.R. 428 (Bankr. E.D.N.Y. 2018).

### *Whether Arbitration Would Present a Severe or Inherent Conflict with, or Necessarily Jeopardize the Objectives of, the Bankruptcy Code*

Another key consideration in determining whether Ms. Golden should be compelled to arbitrate her claims is the important and well-established federal policy in support of arbitration, as reflected in the enforcement of pre-dispute arbitration clauses.  The FAA "establishes a 'federal policy favoring arbitration.'"  *McMahon*, 482 U.S. at 226 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  It "reflects the overarching principle that arbitration is a matter of contract."  *Italian Colors*, 570 U.S. at 233.  The FAA states:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

The Supreme Court confirmed the importance of this policy in *Epic Systems*.  There, the Court stated that "we have often observed that the [FAA] requires courts 'rigorously' to 'enforce

arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted.'" *Epic Systems Corp.*, 138 S. Ct. at 1621 (quoting *Italian Colors*, 570 U.S. at 233). The Court also observed that attempts to avoid the FAA's directive in favor of arbitration based on an argument that arbitration would displace a significant statutory objective face "a stout uphill climb" and that courts are "not at liberty to pick and choose among congressional enactments and must instead strive to give effect to both." *Epic Systems Corp.*, 138 S. Ct. at 1624 (internal quotations and citation omitted).

The Supreme Court next turned to a close analysis of the statutes at issue, the Fair Labor Standards Act and the National Labor Relations Act (the "NLRA"), to determine whether those statutes, and in particular, Section 7 of the NLRA, "displace the [FAA and outlaw [arbitration] agreements like" the one at issue. *Epic Systems Corp.*, 138 S. Ct. at 1624. The Court concluded that "[a] close look at the employees' best evidence of a potential conflict turns out to reveal no conflict at all." *Epic Systems Corp.*, 138 S. Ct. at 1625. Both the particular language of the NLRA's Section 7 and the "NLRA's broader structure" supported the conclusion that Congress did not address "what rules should govern the adjudication of class or collective actions in court or arbitration," or "what procedures Section 7 might protect." *Epic Systems Corp.*, 138 S. Ct. at 1617, 1625.

Consistent with this policy, the party opposing arbitration has the burden to demonstrate that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. *Epic Systems Corp.*, 138 S. Ct. at 1624. *See McMahon*, 482 U.S. at 227 (stating that "[t]he burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue."). Congressional intent may be

discerned through the "'text or legislative history' . . . or from an inherent conflict between arbitration and the statute's underlying purposes." *McMahon*, 482 U.S. at 227 (quoting *Mitsubishi Motors Corp.*, *v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). Only those proceedings that are "premised on provisions of the [Bankruptcy] Code that 'inherently conflict'" with the FAA, and proceedings where arbitration would "necessarily jeopardize the objectives of the Bankruptcy Code," present the type of severe and inherent conflict necessary to demonstrate congressional intent to preclude a waiver of judicial remedies. *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1067 (5th Cir. 1997). That is, just as arbitration clauses require the arbitration of claims within their scope, they do not – and cannot – reach claims that are outside those bounds.

Courts recognize that not every dispute between parties that have entered into a pre-dispute arbitration agreement necessarily comes within the scope of that agreement, and also recognize that additional considerations may arise within the context of a bankruptcy proceeding.

In two decisions that have particular resonance here, the Second Circuit found that a bankruptcy court did not abuse its discretion in denying to compel arbitration of violations of a bankruptcy court's discharge order. In *Anderson*, the Second Circuit held that in order to determine whether enforcement of an arbitration agreement would present an inherent conflict with the Bankruptcy Code, a bankruptcy court must first determine whether the issue involves a core or non-core proceeding. *Anderson*, 884 F.3d at 387. The Second Circuit observed that "'[b]ankruptcy courts are more likely to have discretion to refuse to compel arbitration of core bankruptcy matters.'" *Anderson*, 884 F.3d at 388 (quoting *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006)).

As the Second Circuit explained, if the court determines that the issues are core, then in order to determine whether an inherent conflict exists, "the bankruptcy court is tasked with engaging in a 'particularized inquiry into the nature of the claim and the facts of the specific bankruptcy.'" *Anderson,* 884 F.3d at 387 (quoting *Hill*, 436 F.3d at 108). "'The objectives of the Bankruptcy Code relevant to this inquiry include the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders.'" *Anderson*, 884 F.3d at 389 (quoting *Hill*, 436 F.3d at 108). And as the Second Circuit concluded, if the bankruptcy court determines that arbitration would create a "severe" or "inherent" conflict with the purposes of the Bankruptcy Code, "it has discretion to conclude that 'Congress intended to override the [FAA's] general policy favoring the enforcement of arbitration agreements.'" *Anderson*, 884 F.3d at 387 (quoting *Hill*, 436 F.3d at 108).

The Second Circuit concluded in *Anderson* that arbitration of a claim based on an alleged violation of the Bankruptcy Code's discharge injunction would "'seriously jeopardize a particular core bankruptcy proceeding.'" *Anderson*, 884 F.3d at 392 (quoting *In re United States Lines*, 197 F.3d at 641). The Second Circuit arrived at this conclusion for several reasons. First, it found that "the discharge injunction is integral to the bankruptcy court's ability to provide debtors with the fresh start that is the very purpose of the [Bankruptcy] Code." *Anderson*, 884 F.3d at 390. Second, the debtor's claim in that case was with respect to an "ongoing bankruptcy matter that requires continuing court supervision." *Id*. And finally, "the equitable powers of the bankruptcy court to enforce its own injunctions are central to the structure of the Code." *Id*. The Second Circuit observed that the fact that the claim stemmed from a putative class action did not alter their conclusion.

17

In *Belton*, the Second Circuit affirmed its holding in *Anderson*, grounding its decision in Supreme Court precedent. The Second Circuit explained that "*Epic Systems* never stated an intention to overrule *McMahon* or render any prong of its tripartite test a dead letter." *Belton*, 961 F.3d at 616. Rather, the court observed, "*Epic Systems* . . . clarif[ied] that where two of *McMahon*'s factors clash, a court should resolve the dispute in favor of the statutory text and any contextual clues derived therefrom." *Belton*, 961 F.3d at 616 (citing *Henry v. Educ. Fin. Serv.* (*In re Henry*), 944 F.3d 587, 592 (5th Cir. 2019)).

The Second Circuit also examined the Bankruptcy Code's text and legislative history. First, the Second Circuit concluded that the text of the Bankruptcy Code is silent on the issue of arbitration and "offers little guidance on Congress' intentions in the context of contempt proceedings like those at issue here." *Belton*, 961 F.3d at 617. It reasoned, however, that silence in a statute's text is not "outcome determinative – since that would have rendered much of *Epic Systems*'s analysis surplusage." *Belton*, 961 F.3d at 616. And the court found that "the legislative history of the relevant provisions is similarly unenlightening." *Belton*, 961 F.3d at 617. As a result, the Second Circuit concluded that in the absence of any statutory text or "contextual clues" to rely upon, it was bound by its conclusion in *Anderson* that there is an inherent conflict between the Bankruptcy Code and the FAA. *Belton*, 961 F.3d at 616.

These considerations are consistent with the Supreme Court's guidance in *Epic Systems*. There, the Court cautioned that it was not the role of a court to rewrite statutes in order to find a bar to arbitration of a claim, and that "[a]llowing judges to pick and choose between statutes risks transforming them from expounders of what the law *is* into policymakers choosing what the law *should be*." *Epic Systems Corp.*, 138 S. Ct. at 1624. And here, the Second Circuit's analysis in *Anderson* looks to the "objectives of the Bankruptcy Code" and the overall structure of the

bankruptcy system, including the question of whether an issue is core or non-core, and a "'particularized inquiry into the nature of the claim and the facts of the specific bankruptcy,'" as well as "'the undisputed power of a bankruptcy court to enforce its own orders.'"  *Anderson,* 884 F.3d at 389 (quoting *Hill,* 436 F.3d at 108).

To the same effect, in *Belton*, the Second Circuit "exhaustively parse[d] the [Bankruptcy] Code in search of . . . congressional intent" by reexamining its conclusion in *Anderson* in light of the Bankruptcy Code's statutory text and history.  *Belton*, 961 F.3d at 615.  And it confirmed that it would follow its reasoning in *Anderson* because the "text offers little guidance" and "the legislative history of the relevant provisions is similarly unenlightening."  *Belton*, 961 F.3d at 617.  This is akin to the "close look" at the statute and claim undertaken by the Supreme Court in *Epic Systems*.  *Epic Systems Corp.*, 138 S. Ct. at 1625.  In undertaking these tasks, a court does no more and no less than interpreting and applying the law in the context of a particular case.

As the Second Circuit has held, to determine whether an inherent conflict exists, this Court must engage in a particularized inquiry into the nature of Ms. Golden's claims and the facts of this specific bankruptcy case.  Courts may refuse to compel arbitration where "resolution of the [disputed] claims directly implicated matters central to the purposes and policies of the Bankruptcy Code."  *Hill*, 436 F.3d at 110.  Courts have considered policies including the discharge as a tool to provide a fresh start, and a bankruptcy court's ability to enforce its own injunctions, among others.  As the Second Circuit observed, "the discharge injunction is integral to the bankruptcy court's ability to provide debtors with the fresh start that is the very purpose of the [Bankruptcy] Code," and "the equitable powers of the bankruptcy court to enforce its own injunctions are central to the structure of the [Bankruptcy] Code."  *Anderson,* 884 F.3d at 390.

Here, the Court considers whether compelling arbitration of this dispute would interfere with Ms. Golden's ability to receive a fresh start, and whether compelling arbitration infringes upon a bankruptcy court's ability to enforce its own injunctions, including the discharge injunction.

The discharge as a tool to provide a fresh start.  One of the fundamental principles of bankruptcy law is that a bankruptcy discharge enables the "'honest but unfortunate debtor'" to receive a fresh start.  *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)).  *See Chicago v. Fulton*, 592 U.S. ___, 141 S. Ct. 585, 593 (2021) (Sotomayor, J., concurring) (quoting *Marrama*, 549 U.S. at 367); *McKenzie-Gilyard v. HSBC* (*In re McKenzie-Gilyard*), 388 B.R. 474, 480 (Bankr. E.D.N.Y. 2007) (observing that a debtor's ability to receive a fresh start is one of the fundamental principles of bankruptcy).  The "discharge is the paramount tool used to effectuate the central goal of bankruptcy:  providing debtors a fresh financial start."  *Anderson*, 884 F.3d at 390.  It protects not only the debtor, but also those creditors whose debts were incurred after the debtor filed her bankruptcy case, as well as those creditors whose debts are nondischargeable.  And it takes the form of a court order.  11 U.S.C. § 524.

Discover argues that Ms. Golden's ability to achieve a fresh start would not be impeded by arbitration of her discharge violation claims.  Discover contends that other adjudicatory bodies often resolve bankruptcy matters and that "bankruptcy matters – including the dischargeability of debts – are arbitrated all the time."  Def's Mem. at 16.  It cites to the Second Circuit's decision in *Hill* and argues that it supports this position.  And it argues that Ms. Golden's Arbitration Agreement authorizes the arbitrator to award the exact relief that is being sought from this Court.

In *Hill*, the Second Circuit held that the court had discretion to compel arbitration of an automatic stay violation, and found that compelling arbitration of such claims would not inherently conflict with the Bankruptcy Code because the violation was not an ongoing one, the bankruptcy case was closed, the debtor had received a discharge, and resolution of the claim would not affect an ongoing reorganization or any party's future conduct. *Hill*, 436 F.3d at 110.

Some twelve years later, in *Anderson*, the Second Circuit distinguished its conclusion in *Hill* and recognized that while arbitration of automatic stay violations under the circumstances present in that case might not pose an inherent conflict with the Bankruptcy Code, there would be such a conflict if a discharge violation claim was sent to arbitration "[b]ecause there is no matter more 'central to the purposes and policies of the Bankruptcy Code' than the fresh start provided by discharge." *Anderson*, 884 F.3d at 390. As a result, the court concluded, "arbitration of Anderson's [discharge violation] claim presents an inherent conflict with the Bankruptcy Code." *Id.* And just over two years later, in *Belton*, the Second Circuit affirmed its holding in *Anderson*. The court explained that while state courts have concurrent jurisdiction to enforce a discharge injunction as an affirmative defense in collection suits, only the bankruptcy court that issued the discharge order may offer a contempt remedy for an alleged violation of a court order and injunction. *Belton*, 961 F.3d at 616. This is "[b]ecause our Court has never identified a private right of action under [Bankruptcy Code] section 524" so debtors must pursue their remedy through contempt proceedings. *Id.*

Here, as in *Anderson*, compelling arbitration of Ms. Golden's claims for violations of the discharge injunction would create an inherent conflict with the Bankruptcy Code. Discharge violations inherently impede a debtor's ability to achieve a fresh start, and therefore, compelling parties to arbitrate an alleged discharge violation is inappropriate. The resolution of Ms.

Golden's claims directly implicates a central purpose of the Bankruptcy Code, namely her ability to achieve a fresh start.  For these reasons, the Court finds that arbitration of Ms. Golden's claims would inherently conflict with the Bankruptcy Code's objectives of providing a fresh start, and therefore, that this consideration weighs against compelling arbitration of these claims.

<u>The enforcement of the discharge injunction.</u>  Part of "the particularized inquiry into the nature of the claim and the facts of a specific bankruptcy" is the "undisputed power of a bankruptcy court to enforce its own orders." *Hill*, 436 F.3d at 108.  The Second Circuit has recognized that the "enforcement of injunctions is a crucial pillar of the powers of the bankruptcy courts and central to the statutory scheme." *Anderson*, 884 F.3d at 390.

To the same effect, bankruptcy courts have significant familiarity and expertise in the interpretation and application of the law surrounding alleged discharge violations.  As the Second Circuit observed, "[t]hough the discharge injunction itself is statutory and thus a standard part of every bankruptcy proceeding, the bankruptcy court retains a unique expertise in interpreting its own injunctions and determining when they have been violated." *Anderson*, 884 F.3d at 390-91.  The Second Circuit further recognized that the fact that the discharge injunction is statutorily based and that it is similar, and often uniform, across bankruptcy cases does not change "the simple fact that the discharge injunction is an order issued by the bankruptcy court and that the bankruptcy court alone possesses the power and unique expertise to enforce it," and that violations of the discharge injunction "are enforceable only by the bankruptcy court and only by a contempt citation." *Anderson*, 884 F.3d at 391.  And in *Belton*, the court reiterated that "the only court that may offer a contempt remedy is the court that issued the discharge order – the bankruptcy court." *Belton*, 961 F.3d at 616-17.

This is consistent with the power generally accorded to courts, rather than arbitrators, to attend to the question of compliance with court orders, and more broadly, the significance of respect for courts and the judicial process.  As the Second Circuit noted:

> The power to enforce an injunction is complementary to the duty to obey the injunction, which the Supreme Court has described as a duty borne out of "respect for judicial process."  . . . That same respect for judicial process requires us to hold that the bankruptcy court alone has the power to enforce the discharge injunction in Section 524.

*Anderson*, 884 F.3d at 391 (citation omitted).

In the Complaint, Ms. Golden alleges that certain of her debts were discharged pursuant to the Court's Discharge Order on April 9, 2009, that Discover was notified pursuant to Bankruptcy Rule 4004(g), and that Discover nevertheless sought to collect on those debts by use of dunning letters, emails, text messages, and phone calls to recover the discharged debt in violation of Section 524.  That is, Ms. Golden alleges that Discover is in contempt of the discharge injunction contained in the Court's Discharge Order.

Here, Ms. Golden's allegations and claims for relief seek the enforcement of a court order – the discharge injunction – that is central to the statutory scheme and purpose of the Bankruptcy Code.  Courts – not arbitration proceedings – are the appropriate forums to address alleged violations of court orders.  And the resolution of Ms. Golden's claims directly implicates goals and objectives that are central to the purposes of the Bankruptcy Code, including the goal of providing a debtor with a fresh start.  For these reasons, the Court finds that arbitration of Ms. Golden's claims would inherently conflict with the Bankruptcy Code's objectives, and that therefore, this consideration too weighs against compelling arbitration of these claims.

*            *            *

For these reasons, the Court finds that arbitration of Ms. Golden's would present a severe and inherent conflict with the Bankruptcy Code, and additionally, that it would necessarily jeopardize the objectives of the Bankruptcy Code.  As a result, the Court declines to compel arbitration of Ms. Golden's claims.

Conclusion

Based on the entire record, and for the reasons set forth herein, the Court concludes that Discover has not established that the Court should compel arbitration of the claims in this adversary proceeding, and Discover's Motion to Compel Arbitration is denied.  An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**January 25, 2021**

**Elizabeth S. Stong**
**United States Bankruptcy Judge**