UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

In re                                                    Chapter 7

       Tashanna B Golden,                         Case No. 16-40809-ess
       fka Tashanna B Pearson,

                Debtor
-------------------------------------------------------------------x
Tashanna B Golden, fka Tashanna B Pearson, on
behalf of herself and all others similarly situated

                Plaintiff,                Adv. Pro. No. 20-01051-ess

      -against-

Discover Bank,

                Defendant.
-------------------------------------------------------------------x

## MEMORANDUM DECISION ON THE DEFENDANT'S
## MOTION TO STRIKE CLASS ALLEGATIONS

*Appearances*:

George F. Carpinello, Esq.
Adam Shaw, Esq.
Jenna Smith, Esq.
Boies Schiller Flexner LLP
30 South Pearl Street (11th Floor)
Albany, NY 12207
  *Attorneys for Plaintiff*
  *Tashanna B. Golden, fka Tashanna B.*
  *Pearson, on behalf of herself and all others*
  *similarly situated*

Jason W. Burge, Esq.
Kathryn J. Johnson, Esq.
Fishman Haygood, LLP
201 Saint Charles Avenue (Suite 4600)
New Orleans, LA 70170
  *Attorneys for Plaintiff*

Clay Jackson Pierce, Esq.
Erin L. Hoffman, Esq.
Kyle Hosmer, Esq.
Brian P. Morgan, Esq.
Faegre Drinker Biddle & Reath LLP
1177 Avenue of the Americas
New York, NY 10036
  *Attorneys for Defendant*
  *Discover Bank*

*Tashanna B. Golden, fka Tashanna B.*
*Pearson, on behalf of herself and all others*
*similarly situated*

Joshua B. Kons, Esq.
50 Albany Turnpike (Suite 4024)
Canton, CT 06019
  *Attorneys for Plaintiff*
  *Tashanna B. Golden, fka Tashanna B.*
  *Pearson, on behalf of herself and all others*
  *similarly situated*

Lynn E. Swanson, Esq.
Jones, Swanson, Huddell & Garrison, LLC
601 Poydras Street (Suite 2655)
New Orleans, LA 70130
  *Attorneys for Plaintiff*
  *Tashanna B. Golden, fka Tashanna B.*
  *Pearson, on behalf of herself and all others*
  *similarly situated*

July 19, 2021

**HON. ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

<u>**Introduction**</u>

The matter before the Court is a motion by Defendant Discover Bank ("Discover") to strike class allegations, with prejudice, from the Complaint filed on May 12, 2020 pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(f), as incorporated by Federal Rules of Bankruptcy Procedure 7012 and 7023 (the "Motion to Strike").

Discover argues that this Court lacks the jurisdiction to adjudicate discharge violation claims arising from discharge orders issued outside this District. It argues that subject matter jurisdiction alone does not enable one bankruptcy court to enforce another's discharge order. Discover asserts that both the Supreme Court and the Second Circuit have made clear that a court retains jurisdiction over its own prior orders, and that this retention enables the court to interpret and enforce those orders. And it argues that asking the Court to interpret and enforce discharge orders entered by other bankruptcy courts is an attempt to divest those courts of jurisdiction and to deprive them of their right to enforce their own orders.

Ms. Golden disagrees. She responds first that this Court plainly has subject matter jurisdiction to proceed here. She points to Judiciary Code Section 1334, which is the source of this Court's – and every bankruptcy court's – subject matter jurisdiction "to adjudicate claims arising under or related to the Bankruptcy Code," and Bankruptcy Rule 7023, which permits "this Court, like all bankruptcy courts, . . . to entertain class actions." Plf's Opp. at 4, ECF No. 9. Next, she argues that the Supreme Court mandates that courts exercise their subject matter jurisdiction. She also disputes that only the issuing court can adjudicate a discharge injunction violation claim, and questions how, if that is so, one judge within a district could hear even a district-wide class claim. And finally, Ms. Golden disagrees with Discover's interpretation of

recent Second Circuit and Supreme Court decisions and argues that those cases either support her position here or do not address it.

Ms. Golden commenced this adversary proceeding as a putative class action, on behalf of herself and others similarly situated, by filing a complaint against Discover seeking a determination that certain debts that she incurred as a student are not nondischargeable student loan debts under Bankruptcy Code Section 523(a)(8)(B), and a finding of civil contempt against Discover for willful violations of the bankruptcy discharge injunction.  Compl., ECF No. 1.  Ms. Golden alleges that Discover and other creditors represented to her and to similarly situated student debtors that the Bankruptcy Code prohibited discharge of "any loan made to any person for any educational purpose," when they knew that "only private loans that meet the requirements of section 523(a)(8)(B) [are] nondischargeable."  Compl. ¶ 19. Ms. Golden seeks to maintain this action on behalf of herself and as a representative of a nationwide class consisting of individuals who, like her, "received private loans owned or serviced by [Discover] which exceeded the cost of attendance at such institutions as defined in 26 U.S.C. § 221(d); who obtained bankruptcy discharges after January 1, 2005; who were subsequently subjected to [Discover's] acts to collect on the loans; and who have not reaffirmed their loans."  Compl. ¶ 45.

Discover's Motion to Strike calls for this Court to consider whether the issues that it identifies are distinct from the issues to be addressed in the context of class certification – that is, whether "the motion 'addresses issues separate and apart from issues that will be decided on a class certification motion.'"  Def's Mem. at 8, ECF No. 7 (quoting *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 52 (E.D.N.Y. 2017)) (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012)).  If the questions presented are, in substance, the same as the

questions to be addressed on a motion for class certification, then they should be deferred until that matter is before the Court, and addressed in that context.

Discover's Motion to Strike also calls for this Court to consider whether it lacks jurisdiction, including subject matter jurisdiction and the jurisdiction to enter a remedy, to consider Ms. Golden's allegations that seek the certification of a nationwide class. Although Discover does not dispute that the Court has subject matter jurisdiction to decide this question, it argues that this Court's jurisdiction is limited on "threshold, non-merits" grounds, which prevent the Court from adjudicating an asserted violation of another court's order. Def's Reply at 13, ECF No. 12. Subject matter jurisdiction – and all matters related to jurisdiction – is foundational, and serves as the starting point for everything that a federal court can do. When that question is raised, even inferentially, it must be addressed, and promptly. Where it is lacking, the court cannot proceed.

And finally, if jurisdiction, including subject matter jurisdiction and the jurisdiction to enter a remedy, is present, and the issues identified are distinct from the questions to be addressed in a motion to certify a class, then the Court must consider whether, at this stage in these proceedings, it is clear that this Court cannot exercise its jurisdiction to entertain this action as a nationwide class and enter a remedy of any type, no matter the definition of the class, the nature of the certification that is sought, or the evidence.

## Jurisdiction

This Court has jurisdiction over this adversary proceeding pursuant to Judiciary Code Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York. In addition, this Court may adjudicate these claims to final

judgment to the extent that they are core proceedings pursuant to Judiciary Code Section 157(b),

and to the extent that they are not core proceedings, pursuant to Judiciary Code Section 157(c)

because the parties have indicated their consent to this Court entering a final judgment.  *See*

*Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 135 S. Ct. 1932, 1948 (2015) (holding that

in a non-core proceeding, the parties' consent to the entry of a final order by a bankruptcy court

may be express or implied).

## **Background**

### *Ms. Golden's Bankruptcy Case*

On February 29, 2016, Tashanna Golden, *fka* Tashanna B. Pearson, filed a petition for

relief under Chapter 7 of the Bankruptcy Code.  Case No. 16-40809.  On July 28, 2016, the

Chapter 7 Trustee filed a "no-asset" report stating that "there is no property available for

distribution from the estate over and above that exempted by law."  Case No. 16-40809, ECF

entry dated July 28, 2016.  On August 3, 2016, the Court entered an order discharging Ms.

Golden (the "Discharge Order"), and on that same day, her bankruptcy case was closed.  On

December 6, 2016, Ms. Golden filed a motion to reopen her bankruptcy case to obtain a

determination of the dischargeability of certain of her student loans, and on January 10, 2017, the

Court entered an order reopening the case.

### *Selected Procedural History of this Adversary Proceeding*

On May 12, 2020, Ms. Golden commenced this adversary proceeding as a putative class

action, on behalf of herself and others similarly situated, by filing a complaint against Discover

seeking a determination that certain debts that she incurred as a student are not nondischargeable

student loan debts under Bankruptcy Code Section 523(a)(8)(B), and a finding of contempt

against Discover for civil contempt for willful violations of the bankruptcy discharge injunction.

Ms. Golden requests a declaratory judgment, pursuant to Judiciary Code Section 2201 and Bankruptcy Rule 7001(9), that her debts were discharged by operation of law on August 3, 2016, the date of her bankruptcy discharge, because they are not student loans excluded from discharge under Section 523(a)(8).  Ms. Golden claims that since Discover was notified of the Discharge Order pursuant to Bankruptcy Rule 4004(g) and still sought to collect on her debts by use of dunning letters, e-mails, text messages, and telephone calls, the Court should cite Discover for civil contempt and order it to pay damages in an amount to be determined at trial for willful violations of the Discharge Order and Bankruptcy Code Section 524, and also to pay her attorneys' fees and costs.

On July 13, 2020, Discover moved to compel arbitration of Ms. Golden's claims and dismiss this case, or, in the alternative, to dismiss or strike Ms. Golden's class allegations (the "Motion to Strike"), and filed a memorandum of law in support (the "Def's Mem.") together with a Declaration of Arthur Page (the "Page Declaration").[1]  On August 11, 2020, Ms. Golden filed opposition to the Motion to Strike.  Plf's Opp., ECF No. 9.  And on September 23, 2020, Discover filed a reply to Ms. Golden's opposition.

On February 4, 2021, the Court heard arguments from the parties, and from time to time, including on May 27, 2021, the Court held continued pre-trial conferences and hearings on the Motion to Strike, and the record is now closed.

---

[1] On January 25, 2021, the Court entered a memorandum decision and order denying that portion of Discover's motion seeking to compel arbitration and dismiss the Complaint.  *See* ECF Nos. 25, 26.

*The Allegations of the Complaint*

Ms. Golden alleges that Discover has knowingly "appropriated a legal presumption for a class of debt" – including certain loans that she took out while she was a student at the University of Pennsylvania Law School – that it knows is not entitled to a presumption of nondischargeability.  Compl. ¶ 1.  She claims that Discover knowingly misled her and other student debtors about the nature of these obligations.  Ms. Golden advances these allegations on behalf of an alleged class of similarly situated individuals who have declared bankruptcy since 2005 across the United States, with loans originated or serviced by Discover.  And Ms. Golden alleges that certain of the debts that she incurred in connection with her law school education are not nondischargeable student loans under Bankruptcy Code Section 523, and that Discover violated the discharge injunction entered in her bankruptcy case by seeking to collect on these debts after she received her bankruptcy discharge.

In her bankruptcy petition, Ms. Golden listed on her Schedule E/F certain "student loans" that she owes, including the loans described in the Complaint, that Discover made to her in excess of the University of Pennsylvania Law School's published cost of attendance for the 2006-07 academic year.  Compl. ¶ 29.  She alleges that these loans are not nondischargeable student loans or conditional educational grants under Bankruptcy Code Section 523(a)(8).  And Ms. Golden alleges that on or about August 3, 2016, she received a discharge, and on or about August 5, 2016, her creditors likewise "received notice of discharge."  Compl. ¶ 32.

Ms. Golden alleges that rather than treat these debts as discharged, as required by bankruptcy law, Discover resumed its collection efforts after she received a discharge.  She argues that Discover "fraudulently informed [her] that the [d]ebts were not discharged and demanded . . . and accepted payment."  Compl. ¶ 33.  Ms. Golden alleges that the "Defendant's

6

abusive, deceptive and illegal collection efforts after [Ms.] Golden's Debts were discharged were made knowingly and willfully in violation of this Court's discharge orders."  Compl. ¶ 34.

Ms. Golden alleges that Discover and other creditors represented to her and to similarly situated student debtors that the Bankruptcy Code prohibited discharge of "*any* loan made to any person for any educational purpose," when they knew that "only private loans that meet the requirements of section 523(a)(8)(B) [are] nondischargeable."  Compl. ¶ 19.  She claims that Discover "failed to disclose facts and information that would inform debtors of the fact that private loans were only non-dischargeable if they met the requirements of section 523(a)(8)(B), and . . . that debtors' non-qualified loans were, in fact, discharged in bankruptcy."  Compl. ¶ 20.

Ms. Golden requests a declaratory judgment, pursuant to Judiciary Code Section 2201 and Bankruptcy Rule 7001(9), that her debts were discharged by operation of law on August 3, 2016, the date of her bankruptcy discharge, because they are not student loans excluded from discharge under Section 523(a)(8).  Ms. Golden claims that since Discover was notified of the Discharge Order pursuant to Bankruptcy Rule 4004(g) and still sought to collect on her debts by use of dunning letters, e-mails, text messages, and telephone calls, the Court should cite Discover for civil contempt and order it to pay damages in an amount to be determined at trial for willful violations of the Discharge Order and Bankruptcy Code Section 524, and also to pay her attorneys' fees and costs.

And finally, Ms. Golden seeks to maintain this action on behalf of herself and as a representative of the following nationwide class:

> [i]ndividuals who attended or intended to attend Title IV institutions and who received private loans owned or serviced by Defendant which exceeded the cost of attendance at such institutions as defined in 26 U.S.C. § 221(d); who obtained bankruptcy discharges after January 1, 2005; who were subsequently subjected to Defendant's acts to collect on the loans; and who have not reaffirmed their loans.

Compl. ¶ 45.  Ms. Golden alleges that this action and class satisfy the requirements of

ascertainability, numerosity, typicality, adequacy of representation, and commonality necessary

for class certification under Rule 23(a).

*Discover's Motion To Strike Class Allegations*

        As a threshold matter, Discover argues that its motion is timely, and ripe for

determination at this stage in these proceedings.  It urges that discovery will not alter the analysis

of this purely legal question, because "'[a] defendant may move to strike class claims before a

plaintiff moves to certify the class.'"  Def's Mem. at 8 (quoting *Maddison v. Comfort Sys. USA*

(*Syracuse*)*, Inc.*, 2018 WL 679477, at *7 (N.D.N.Y. Feb. 1, 2018)).  It also notes that Rule 23(c)

states that "'[a]t an early practicable time. . . the court must determine by order whether to certify

the action as a class action.'"  Def's Mem. at 8 (quoting Fed. R. Civ. P. 23(c)(1)(A)).

        And Discover points out that a court in this district concluded that it was appropriate to

consider a motion to strike class allegations where "the motion [to strike] 'addresses issues

separate and apart from issues that will be decided on a class certification motion.'"  Def's Mem.

at 8 (quoting *Greene*, 262 F. Supp. 3d at 52) (internal quotation omitted).  It notes that the

question of the "jurisdictional limitation on the Court's ability to entertain [Ms. Golden's] class

allegations is certainly an issue 'separate and apart from the issues that' the Court would

consider on a class-certification motion."  Def's Mem. at 24 (quoting *Greene*, 262 F. Supp. 3d at

52).

        Discover argues that Ms. Golden's class allegations must be stricken at this time because

this Court lacks the jurisdiction to adjudicate contempt claims based on discharge injunctions

issued by other courts.  In doing so, it notes that "decisions in this and other Circuits" have found

"that Congress did not include in the Bankruptcy Code a private right of action for discharge-

violation claims." Def's Mem. at 20 (citing cases). And because a discharge "does not give

right to a private right of action," the only means by which individuals can enforce their

discharge injunction "is through contempt," and "[c]ontempt . . . is a power vested solely in the

court that issued the order allegedly violated." Def's Mem. at 20 (citing cases). Discover states

that "this Court lacks jurisdiction over claims requiring the interpretation and enforcement of

discharge orders issued outside of the Eastern District of New York" and accordingly, "[t]he

Court should therefore dismiss or strike [Ms. Golden's] class allegations." Def's Mem. at 19.

Discover argues that this conclusion is not altered by the fact that "[a] discharge order is a

statutory creature." Def's Mem. at 19. It notes that "the injunction is effective only upon the

entry of a discharge order by a bankruptcy court in a specific bankruptcy case." Def's Mem. at

19 (citing Bankruptcy Code Section 727(a)). It points to the Second Circuit's decision in

*Anderson v. Credit One Bank, N.A.* (*In re Anderson*), 884 F.3d 390 (2d Cir. 2018), where the

court observed that "'[n]either the statutory basis of [a discharge] order nor its similarity – even

uniformity – across bankruptcy cases alters the simple fact that the discharge injunction is an

order issued by the bankruptcy court and that the bankruptcy court alone possesses the power

and unique expertise to enforce it.'" Def's Mem. at 21 (quoting *In re Anderson*, 884 F.3d at

391).

And Discover notes that in *Crocker v. Navient Solutions, L.L.C.* (*In re Crocker*), 941 F.3d

206, 210-17 (5th Cir. 2019), the "Fifth Circuit held that a bankruptcy court lacked the ability to

interpret and enforce discharge orders entered by courts in other judicial districts." Def's Mem.

at 21 (citing *In re Crocker*, 941 F.3d at 210-17). It also cites to the Eleventh Circuit's decision in

*Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958 (11th Cir. 2012), and argues that there too, the

court found that "'the court that issued the injunctive order alone possesses the power to enforce

compliance with and punish contempt of that order.'"  Def's Mem. at 22 (quoting *Alderwoods*, 682 F.3d at 970).

Discover also points to the Supreme Court's decision in *Taggart v. Lorenzen*, arguing that "[b]ecause a discharge order is an injunction, its enforcement is subject to the federal courts' jurisprudence governing how courts should enforce injunctions."  Def's Mem. at 19 (citing *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019)).  It notes that the Second Circuit has stated that "'[m]ost circuits that have considered the issue have rejected' a plaintiff's attempt to have one court hold a defendant in contempt of a discharge order entered by another court, '[a]nd those cases are buttressed by the Supreme Court's recent decision in *Taggart*.'"  Def's Mem. at 21 (quoting *Belton v. GE Capital Retail Bank* (*In re Belton*), 961 F.3d 612, 617-18 (2d Cir. 2020), *cert. denied sub nom. GE Capital Retail Bank v. Belton*, 141 S. Ct. 1513 (2021)).  Discover points to decisions in other circuits that, it argues, follow a similar path.  *See* Def's Mem. at 21-23 (citing cases).  And Discover notes that some courts have "restricted contempt proceedings to the court that issued the underlying order [in order] to discourage forum-shopping."  Def's Mem. at 23.

*Ms. Golden's Arguments in Opposition to the Motion To Strike Class Allegations*

Ms. Golden opposes the relief sought by Discover, on several grounds.  At the outset, she argues that this Court has subject matter jurisdiction to consider the claims asserted on behalf of a putative nationwide class.  Ms. Golden argues that subject matter jurisdiction here is provided by Judiciary Code Section 1334(b), which gives the district courts jurisdiction over all civil proceedings arising under the Bankruptcy Code, and that the enforcement of a discharge injunction is a core bankruptcy matter arising under Bankruptcy Code Sections 727, 524, and

105.  Ms. Golden also states that, once federal subject matter jurisdiction is proper in the district

court, subject matter jurisdiction is proper in the bankruptcy court to which the matter is referred.

And Ms. Golden argues that "subject matter jurisdiction is not lost or limited merely

because the action is brought as a class action," which is specifically allowed by the Bankruptcy

Rules.  Plf's Opp. at 4.  She points out that this jurisdiction is consistent with "the fact that both

the bankruptcy court and the district court in three § 524 class actions in this Circuit have already

approved of nationwide settlements."  Plf's Opp. at 4 (citing cases).

Ms. Golden also asserts that unlike jurisdiction grounded in the *in rem* nature of some

aspects of a bankruptcy case, her claims, like the claims addressed in *Haynes v. Chase Bank

USA, N.A.* (*In re Haynes*), 2014 WL 3608891 (Bankr. S.D.N.Y. July 22, 2014), "are concerned

with prohibiting the collection of *in personam* debts and have nothing to do with the debtor's

estate or *in rem* jurisdiction."  Plf's Opp. at 5 (citing *In re Haynes*, 2014 WL 3608891, at *6-7).

For these reasons, she argues, Discover's reliance on the Eleventh Circuit's decision in

*Alderwoods* is similarly misplaced, because there, the court addressed the scope of the

bankruptcy court's jurisdiction under 28 U.S.C. § 1334(c), and the administration of the property

of the estate – while here, this Court's jurisdiction is grounded in "§ 1334(b), which gives

jurisdiction of 'all civil proceedings arising under Title 11, or arising in or related to cases under

Title 11.'"  Plf's Opp. at 15 (quoting 28 U.S.C. § 1334(b)).

Ms. Golden argues that here, the bankruptcy court can entertain a nationwide class, for

many of the same reasons that other courts, including courts within this Circuit, have reached the

same conclusion, and describe the question as a matter of "comity," not "subject matter

jurisdiction."  Plf's Opp. at 5 (citing *Gray v. Petoseed Co.*, 985 F. Supp. 625, 632-34 (D.S.C.

1996), *aff'd*, 129 F.3d 1259 (4th Cir. 1997)).  She argues that several courts have found that

statutory injunctions – like the bankruptcy discharge injunction – are "fundamentally different from other specific, judge-crafted injunctions or orders and bankruptcy courts do not lack subject matter jurisdiction to enforce them." Plf's Opp. at 8 (citing cases). And she points to the bankruptcy court's observation in *In re Haynes* that "'[t]here is . . . a fundamental difference between the normal injunction issued by a court after considering the factors required to be applied in issuing an injunction order and the injunction created by Congress in § 524(a) to support the discharge.'" Plf's Opp. at 9 (quoting *In re Haynes*, 2014 WL 3608891, at *8).

Ms. Golden states that judges have inherent power to control their cases and proceedings and to sanction behavior that interferes with lawful orders. Plf's Opp. at 9 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). She argues that discharge orders and the power to enforce them come from Bankruptcy Code Section 105 and are not unique to any one judge, because the discharge orders at issue are made on identical standardized forms used nationwide. And she urges that to establish a discharge injunction violation, "all that is required is to show that the debt was subject to discharge and not specifically declared to be non-dischargeable." Plf's Opp. at 10.

Ms. Golden notes that this Court has recognized the distinction between individually crafted court orders and "purely statutory" orders, when it found that "judge-specific orders [should] be enforced by the issuing judge," as contrasted with "other situations in which more general enforcement would be acceptable." Plf's Opp. at 10 (citing *In re Brizinova*, 565 B.R. 488 (Bankr. E.D.N.Y. 2017)). She also observes that the First Circuit followed a similar path in concluding that claims for violations of a debtor's discharge could be brought as a nationwide class. Plf's Opp. at 10-11 (citing *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000)). Ms. Golden argues that the issues of equity and the "just, speedy, and inexpensive

determination of every action and proceeding" support allowing a nationwide class. Plf's Opp. at 12 (citing Fed. R. Civ. P. 1). And she points out that "under analogous circumstances," the Second Circuit permitted a court to enforce the injunctive effect of another district court's judgment where it was warranted by the equities of the situation. Plf's Opp. at 12 (citing *Smith v. Woosley*, 399 F.3d 428 (2d Cir. 2005)).

Ms. Golden also argues that the Court should not follow the Fifth Circuit's decision in *In re Crocker*. There, the court permitted one of the named plaintiffs, who received a bankruptcy discharge in the Eastern District of Virginia, to bring a contempt proceeding in the Southern District of Texas, where he now lives. As Ms. Golden acknowledges, the court also noted that "its ruling would make a class action seeking to enforce discharges entered in other bankruptcy courts 'highly dubious.'" Plf's Opp. at 13 (quoting *In re Crocker*, 941 F.3d at 217).

Ms. Golden points to several reasons to distinguish *In re Crocker* from the situation here. She notes that the class action issue was not fully briefed in *In re Crocker*, and as a result, the court did not make an analysis "of the purpose or role of [Bankruptcy Rule] 7023 . . . which expressly allows class actions." Plf's Opp. at 14. She also argues that the decision misinterprets the consequence of the 1978 Bankruptcy Act in the context of Bankruptcy Rule 4004(f), which permits a party to register and enforce a discharge order in a district other than the district that entered it, and suggests that the effect of *In re Crocker* would be to invalidate that rule. Plf's Opp. at 14.

Ms. Golden also argues that in *In re Crocker*, the Fifth Circuit "relied heavily" on the Second Circuit's decision in *In re Anderson* – but also misinterpreted that decision. In *In re Anderson*, she states, the court addressed "whether a contempt proceeding brought for violation

of discharge orders . . . needed to be arbitrated" – not whether a court other than the court that issued the discharge could consider such a claim.  Plf's Opp. at 14.

To the same effect, she notes that the Eleventh Circuit's decision in *Alderwoods*, also cited by the Fifth Circuit in *In re Crocker*, similarly "did not involve a class of debtors seeking to enforce [Section] 524."  Plf's Opp. at 15.  And she notes that the court both "had no occasion to examine the Congressional intent behind the specific grant of class actions in bankruptcy court" and "failed to distinguish between [Section] 1334(c), dealing with property of the estate, and [Section] 1334(b), which gives jurisdiction of 'all civil proceedings arising under Title 11, or arising and/or related to cases under Title 11."  Plf's Opp. at 15 (citing *In re Haynes*, 2014 WL 3608891 at *7).

In addition, Ms. Golden argues that *In re Crocker* "is clearly in tension with" the Fifth Circuit's own earlier decision in *Wilborn v. Wells Fargo Bank, N.A.* (*In re Wilborn*), 609 F.3d 748 (5th Cir. 2010).  Plf's Opp. at 16.  She states that in *In re Wilborn*, the court determined that an alleged district-wide class did not meet the certification requirements of Rule 23, but "nonetheless, strongly affirmed the power of the bankruptcy court to entertain a class action involving debtors who filed bankruptcy petitions before other judges."  Plf's Opp. at 16.  And she argues that "'if bankruptcy court jurisdiction is not permitted over a class action of debtors, Rule 7023 is virtually read out of the rules.'"  Plf's Opp. at 16 (quoting *In re Wilborn*, 609 F.3d at 754).

Next, Ms. Golden argues that the result in *In re Crocker* is, "as a policy matter, unsupportable."  Plf's Opp. at 16.  As a practical matter, she states, "individuals who emerge from bankruptcy with limited means and who move to a new jurisdiction . . . must return to the jurisdiction of discharge, and retain counsel in order to bring a proceeding to enjoin a discharge

violation – even if the violation occurs in the [debtor's] new place of residence." Plf's Opp. at

16. Viewed another way, Ms. Golden argues that *In re Crocker* effectively mandates that "all

those thousands of individuals must bring their own individual actions to force the creditor to

cease its illegal conduct," and debtors who have moved must "make a pilgrimage to the original

bankruptcy court, even if it is thousands of miles away." Plf's Opp. at 16.

Finally, Ms. Golden urges that the Second Circuit's dicta in *In re Belton* does not require

a different result here. She argues that the issue before the court in *In re Belton* was both narrow

– whether a proceeding to hold defendants in contempt for violation of the discharge injunction

should be sent to arbitration – and distinct from the question here. Plf's Opp. at 17 (citing *In re

Belton*, 961 F.3d at 614-15). And she notes that while the court, in dicta, questioned the putative

nationwide class action status of the case, the court also twice stated that the class action issue

was not before it.

<u>Discover's Reply</u>

In reply, Discover emphasizes that "all of the applicable decisions," including *In re

Crocker*, *In re Belton*, and *Taggart*, reject Ms. Golden's position, and that Ms. Golden offers no

legitimate grounds for this Court to come to a different conclusion. Def's Reply at 1, 3 (citing

cases). It asserts that every circuit to have considered the issue has concluded that the only

adjudicatory body that may interpret and enforce a debtor's discharge order is the court that

issued the order. Def's Reply at 2 (citing cases). Discover also maintains that Ms. Golden's

position runs contrary to many cases decided outside of the bankruptcy context, which have

found that claims for contempt may be heard only by the court that issued the underlying order.

Def's Reply at 4 (citing *Chambers*, 501 U.S. at 50; *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481

U.S. 787, 797-98 (1987); *Sullivan v. United States*, 4 F.2d 100, 101 (8th Cir. 1925)). And it

argues that if "the Court allows [Ms. Golden] to proceed with her attempt to represent a nationwide class of borrowers, it would violate not only Second Circuit precedent . . . but also cases from four other circuits."  Def's Reply at 4.

Discover makes clear that it "does not contend that the Court lacks subject matter jurisdiction to hear [Ms. Golden's] claims."  Def's Reply at 1.  And it appears not to contest that a district-wide class remedy could be pursued.  Def's Reply at 16 (stating that "the bankruptcy judges that comprise a bankruptcy court can enforce that court's orders but judges from foreign districts may not.").  At the same time, it states that the issue of subject matter jurisdiction is "separate from whether the Court may adjudicate claims arising from other courts' discharge orders" and that "subject-matter jurisdiction is a necessary, but not sufficient, element of the Court's ability to entertain a nationwide class action."  Def's Reply at 13.

Discover also disputes Ms. Golden's interpretation of *Bessette*, "[t]he only circuit-level case [she] cites for the proposition that this Court may adjudicate contempt claims arising from another court's discharge order."  Def's Reply at 4.  It argues that in *Bessette*, the First Circuit decided whether a district court has the authority to adjudicate to adjudicate a discharge violation claim arising from a discharge order issued by the bankruptcy court in the same district, not whether "bankruptcy or district courts sitting in a specific federal judicial district have the authority to adjudicate discharge-related claims arising from *other* federal districts."  Def's Reply at 5.

And Discover states that Ms. Golden's consideration of *Bessette* ignores the fact that, on remand from the First Circuit, the "district court expressly refused to hear class claims relating to discharge orders issued outside of its federal district," and in explaining its reasoning for doing so, the district court stated that "'[t]he Court that issues the order that was violated is the Court

that determines whether a person is in contempt.'"  Def's Reply at 5 (quoting *Bessette v. Avco Fin. Servs., Inc.*, 279 B.R. 442, 449 (D.R.I. 2002)).  Accordingly, Discover argues that *Bessette* "does not sanction a nationwide class asserting discharge-violation claims."  Def's Reply at 6.

In addition, Discover replies that Ms. Golden does not succeed in her efforts to distinguish the Fifth Circuit's decision in *In re Crocker* from the situation here.  It notes that Ms. Golden does not dispute that in that decision, the Fifth Circuit "considered – and rejected – the same discharge-related claims [Ms. Golden] asserts in this action," in the form of a request to proceed on behalf of debtors with discharges entered by bankruptcy courts in other districts. Def's Reply at 6.

Discover replies that Ms. Golden's argument that the class action issue was not fully briefed in the Fifth Circuit, and as a result, the court did not consider Bankruptcy Rule 7023 which expressly allows class actions, "conflates two separate issues: whether the Court has jurisdiction to enforce discharge orders from other federal districts, and whether [Ms. Golden] has satisfied the requirements of Rule 7023."  Def's Reply at 7.  And it states that the question of whether this Court has jurisdiction to enforce discharge orders issued in other federal districts "necessarily precedes the Court's decision on whether to certify a nationwide class."  Def's Reply at 7.  On that subject, Discover notes, the Fifth Circuit observed that "certifying a class 'that includes debtors whose discharges were entered by bankruptcy courts in other districts' would be 'highly dubious.'"  Def's Reply at 7 (quoting *In re Crocker*, 941 F.3d at 217).

And Discover replies that Ms. Golden is incorrect to argue that *In re Crocker* effectively invalidates Bankruptcy Rule 4004(f), which permits a debtor to register his or her discharge order in another district.  It points out that the Fifth Circuit specifically addressed that issue in *In re Crocker*, and that its holding is consistent with both Supreme Court precedent and scholarly

17

commentary.  Discover also points to the Rules Enabling Act, 28 U.S.C. § 2072, as an additional reason why Bankruptcy Rule 4004(f) simply cannot override jurisdictional limits on one court's authority to interpret and enforce discharge orders entered by other courts.  And it notes that the Bankruptcy Rules themselves provide that they do not extend "'the jurisdiction of the courts or the venue of any matters therein.'"  Def's Reply at 8 (quoting Fed. R. Bankr. P. 9030).

Discover also replies that Ms. Golden is unsuccessful in her effort to avoid the consequences of the Second Circuit's decision in *In re Belton*.  It states that "the *Belton* Court reasoned that, if a bankruptcy court's interest in its discharge order was so great as to make an arbitration agreement unenforceable, that same interest required that discharge-related claims also be addressed by the court that issued the order."  Def's Reply at 9.

Discover states that "*Belton* and *Anderson* both limit the forum in which a plaintiff may bring discharge-violation claims to the court that issued the order allegedly violated."  Def's Reply at 10.  It argues that "to read these authorities as barring arbitration but allowing enforcement of the court's order by a different court would be entirely inconsistent – and would also embrace the kind of anti-arbitration bias that Congress and the Supreme Court have long sought to eradicate."  Def's Reply at 10 (citing *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232 (2013)).  These decisions, Discover notes, support the notion that "the only adjudicatory body able to interpret and enforce a debtor's discharge order is the court that issued it" and therefore, a bankruptcy court is necessarily precluded from "entertain[ing] a nationwide class asserting discharge-violation claims."  Def's Reply at 11.

And Discover replies that both the Supreme Court and the Second Circuit have made clear that a court retains jurisdiction over its own prior orders, and that this retention enables the court to "interpret and enforce [those] orders" – a principle that extends to bankruptcy courts.

18

Def's Reply at 13 (citations omitted).  It urges that if this Court accepts Ms. Golden's invitation to interpret and enforce other courts' discharge orders, it will divest those other courts of jurisdiction and deprive them of their right to enforce their own orders, contrary to applicable Second Circuit authority.

Discover also replies that subject matter jurisdiction alone does not empower a court to hear a case.  It states that "subject-matter jurisdiction is a necessary, but not sufficient, element of the Court's ability to entertain a nationwide class action."  Def's Reply at 13.  Instead, courts recognize other limitations, including the constitutional case-or-controversy requirement, the statutory requirement of venue, and other "'threshold, non-merits' grounds, such as the inability to enforce another court's order."  Def's Reply at 13.  And here, Discover argues, while subject matter jurisdiction is present, other limitations including "the jurisdictional nature of contempt" is "one such threshold ground."  Def's Reply at 14.  In sum, Discover states, "the fact that the court has subject matter jurisdiction over [Ms. Golden's] claims does not mean that the Court has authority to interpret and enforce discharge orders entered by courts in foreign jurisdictions." Def's Reply at 15.

### **The Applicable Legal Standards**

*The Categories of Nondischargeable Debt Under Bankruptcy Code Section 523(a)(8)*

As this Court found in *Homaidan v. SLM Corp.* (*In re Homaidan*), 596 B.R. 86, 95 (Bankr. E.D.N.Y. 2012), *aff'd*, 2021 WL 2964217 (2d Cir. July 15, 2021), Bankruptcy Code Section 523(a)(8) outlines several categories of student debt that may be excluded from discharge.  It states that a debtor is not discharged from any debt that constitutes:

    (A)(i)   an educational benefit overpayment or loan made, insured or guaranteed
              by a governmental unit, or made under any program funded in whole or in
              part by a governmental unit or nonprofit institution; or

(ii)    an obligation to repay funds received as an educational benefit,
scholarship or stipend; or

(B)    any other educational loan that is a qualified education loan, as defined in
section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a
debtor who is an individual.

11 U.S.C. §§ 523(a)(8)(A)(i), 523(a)(8)(A)(ii), 523(a)(8)(B).

And as the Second Circuit has recently observed, "[t]his dense language means that three
categories of educational debt cannot be discharged in bankruptcy: (1) loans and benefit
overpayments backed by the government or a nonprofit; (2) obligations to repay funds received
as an educational benefit, scholarship, or stipend; and (3) qualified private educational loans."
*Homaidan v. Sallie Mae, Inc.* (*In re Homaidan*), 2021 WL 2964217, at *3 (2d Cir. July 15,
2021).

The first and second categories of debt excluded from discharge are described in
Bankruptcy Code Section 523(a)(8)(A)(i).  These are "two types of educational claims: (1)
educational benefit overpayments or loans made, insured, or guaranteed by a governmental unit;
and (2) educational benefit overpayments or loans made under any program partially or fully
funded by a governmental unit or nonprofit institution."  *In re Decena*, 549 B.R. 11, 18 (Bankr.
E.D.N.Y. 2016), *rev'd in part on other grounds*, *Citizens Bank v. Decena*, 562 B.R. 202
(E.D.N.Y. 2016).

A third category of student debt that is excluded from discharge is described in
Bankruptcy Code Section 523(a)(8)(A)(ii).  This category encompasses "funds received as an
educational benefit, scholarship or stipend."  And finally, Bankruptcy Code Section 523(a)(8)(B)
excludes from discharge any "qualified education loan as defined in section 221(d)(1) of the
Internal Revenue Code of 1986."  11 U.S.C. § 523(a)(8)(B).

*The Elements of a Discharge Injunction Violation Claim*

As this Court has observed, "[o]ne of the fundamental principles of bankruptcy law is that a bankruptcy discharge enables a debtor to receive a 'fresh start.'"  *McKenzie-Gilyard v. HSBC Bank Nevada, N.A.* (*In re McKenzie-Gilyard*), 388 B.R. 474, 480 (Bankr. E.D.N.Y. 2007) (citing *Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007)).  The discharge injunction is central to this "fresh start," because it protects debtors "from creditors' attempts to collect discharged debts after bankruptcy."  *In re McKenzie-Gilyard*, 388 B.R. at 480.

Bankruptcy Code Section 524(a)(2) describes the function of a debtor's discharge in broad terms:

> A discharge in a case under this title—. . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2).  This broad scope is confirmed by the legislative history of Section 524(a)(2), which "similarly supports a broad interpretation of an 'act to collect . . . any debt' that violates the Section 524 discharge injunction."  *In re McKenzie-Gilyard*, 388 B.R. at 481 (internal citation omitted).  As another bankruptcy court observed, "the statute's plain terms obviate consideration of its legislative history . . . but it is worth noting that the legislative history . . . also supports a broad reading of the injunction contained in section 524(a)(2)."  *Torres v. Chase Bank USA, N.A.* (*In re Torres*), 367 B.R. 478, 484-85 (Bankr. S.D.N.Y. 2007).  *See Russell v. Chase Bank USA, NA* (*In re Russell*), 378 B.R. 735, 741 (Bankr. E.D.N.Y. 2007) (stating that a broad reading of Section 524(a)(2) is supported by legislative history).

In order adequately to allege a claim for violations of a discharge injunction in the circumstances present here, a plaintiff-debtor must allege that the debtor received a discharge, the defendant received notice of the discharge, and the defendant intended the acts that violated

the discharge. *In re Motichko*, 395 B.R. 25, 31 (Bankr. N.D. Ohio 2008). Of course, for a discharge injunction claim to lie, the debt at issue must be within the scope of the debtor's dischargeable debt. *See In re Eppolito*, 583 B.R. 822, 826 (Bankr. S.D.N.Y. 2018) (stating that "[t]he discharge injunction survives the closure of a bankruptcy case and applies permanently to every debt that is discharged" (internal citation omitted)); *In re Azevedo*, 506 B.R. 277, 283 (Bankr. E.D. Cal. 2014) (observing that "[s]howing a violation of a discharge order by definition requires showing specifically that the order applies to the debt on which the violation is premised") (citing 11 U.S.C. § 524(a)(1)-(2)); *Otten v. Majesty Used Cars, Inc.* (*In re Otten*), 2013 WL 1881736, at *6-8 (Bankr. E.D.N.Y. May 3, 2013) (analyzing the scope of a discharge injunction issued in the plaintiff's bankruptcy case in the context of determining whether the defendants' actions violated the discharge injunction).

And as the Supreme Court has recently stated, a finding of contempt is appropriate when an injunction has been violated. "Under traditional principles of equity practice, courts have long imposed civil contempt sanctions to 'coerce the defendant into compliance' with an injunction or 'compensate the complainant for losses' stemming from the defendant's noncompliance with an injunction." *Taggart,* 139 S. Ct. at 1801 (quoting *United States v. United Mine Workers*, 330 U.S. 258, 303-04 (1947)). In particular, the Supreme Court observed:

> [A] court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct. In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful.

*Taggart*, 139 S. Ct. at 1799. At the same time, the Court also noted that "[w]e have not held, however, that subjective intent is always irrelevant. Our cases suggest, for example, that civil contempt sanctions may be warranted when a party acts in bad faith." *Taggart*, 139 S. Ct. at

1802 (internal citation omitted).

*The Standard for a Motion To Strike Under Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D)*

The context for a motion to strike class allegations from an adversary proceeding is Federal Rule of Civil Procedure 23(a), made applicable in adversary proceedings by Bankruptcy Rule 23. Rule 23 provides that "one or more members of a class may sue . . . as representative parties on behalf of all members only if:

> (1)  the class is so numerous that joinder of all members is impracticable;
> (2)  there are questions of law or fact common to the class;
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

Federal Rule of Civil Procedure 12(f), made applicable in adversary proceedings by Bankruptcy Rule 7012(b), provides that the court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Rule 12(f) may be invoked by the court acting on its own, or on motion by a party. *Id.*

To the same effect, Federal Rule of Civil Procedure 23(d)(1)(D), made applicable in adversary proceedings by Bankruptcy Rule 7023, permits a court to issue an order that "require[s] that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D).

In the context of a putative class action, these Rules permit the court to excise class allegations from a complaint, and to close the door on the prospect of class treatment, before the complaint has been answered or tested by a motion to dismiss and before any discovery, including class discovery, has occurred.

Courts agree that motions to strike class allegations should not be the norm.  As one district court observed:

> "Motions to strike are generally looked upon with disfavor [and] a motion to strike class allegations . . . is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification."

*Chen-Oster*, 877 F. Supp. 2d at 117 (quoting *Chenensky v. N.Y. Life Ins. Co.*, 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011)).  And the court noted that for these reasons, "[g]enerally speaking, then, motions of this kind are deemed procedurally premature."  *Chen-Oster*, 877 F. Supp. 2d at 117.

At the same time, courts recognize, at least implicitly, that motions to strike under Rules 12(f) and 23(d)(1)(D) can serve a useful and even important purpose.  As one court noted in the context of a motion under Rule 23(d)(1)(D), "a motion to strike class allegations . . . may be addressed prior to the certification of a class if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear."  *In re Initial Pub. Offering Sec. Litig.*, 2008 WL 2050781, at *2 (S.D.N.Y. May 13, 2008) (citing cases) (internal citations omitted).

And as the court in *Chen-Oster* observed, a motion to strike class allegations may be appropriate where it "addresses issues 'separate and apart from the issues that will be decided on a class certification motion,'" and in that setting, it would not be "procedurally premature."  *Chen-Oster*, 877 F. Supp. 2d at 117 (quoting *Rahman v. Smith & Wollensky Rest. Group, Inc.*, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008)).

### *Bankruptcy Jurisdiction Under Judiciary Code Section 1334*

Judiciary Code Section 1334 sets forth the grounds for federal jurisdiction over bankruptcy matters.  Section 1334(a) provides that "[e]xcept as provided in [Section 1334(b)],

the district courts shall have original and exclusive jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a).

Section 1334(b) confers original but not exclusive jurisdiction upon district courts in all civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Significantly, Section 1334(b) provides the bankruptcy courts with the ability to reach beyond the assets of a particular bankruptcy estate – as one court noted in considering a motion to dismiss a putative nationwide class, "[a] court no longer is restricted to dealing only with assets under its control; it also has the ability to deal with other matters affecting debtors." *Noletto v. Nationsbanc Mortgage Corp.* (*In re Noletto*), 244 B.R. 845, 849 (Bankr. S.D. Ala. 2000).

And Section 1334(e) confers exclusive jurisdiction upon the district and bankruptcy courts of the debtor's property, the property of the estate. 28 U.S.C. § 1334(e)(1). As the court found in *In re Noletto*, Section 1334(e) "vests the 'home court' with the exclusive power to control and distribute property of the estate." *In re Noletto*, 244 B.R. at 854. But equally, "[Section] 1334(e) does not make the 'home court' the exclusive forum to hear debtor complaints regarding violations of the Bankruptcy Code." *Id*. As another court observed:

> [Section] 1334(e) must be read narrowly to limit the "home court" exclusive jurisdiction of bankruptcy courts strictly to *in rem* matters involving property of the debtor or property of the estate and not as a restriction on nationwide jurisdiction over claims for violations of provisions of the [Bankruptcy] Code, other federal statutory provisions, or other remedies.

*Harker v. Wells Fargo Bank, NA* (*In re Krause*), 414 B.R. 243, 255-56 (Bankr. S.D. Ohio 2009).

### *Authority of the Bankruptcy Court Under Bankruptcy Code Section 105*

Bankruptcy Code Section 105 grants the bankruptcy court power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11

U.S.C. § 105.  It also provides that the court is not precluded from "*sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."  *Id.*

While Section 105 is often viewed as a broad grant of authority, it is similarly well established that this Section also "limits the bankruptcy court's equitable powers, which 'must and can only be exercised within the confines of the Bankruptcy Code.'"  *F.D.I.C. v. Colonial Realty Co.*, 966 F.2d 57, 59 (2d Cir. 1992) (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)).

As the Second Circuit has observed:

> The equitable power conferred on the bankruptcy court by section 105(a) is the power to exercise equity in carrying out the *provisions* of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing.  This language "suggests that an exercise of section 105 power be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective."

*New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.* (*In re Dairy Mart Convenience Stores, Inc.*), 351 F.3d 86, 92 (2d Cir. 2003) (quoting 2 *Collier on Bankruptcy* ¶ 105.01[1]).

### Discussion

Discover's Motion To Strike Class Allegations calls for this Court to address two questions, and each is important.  First, as a threshold matter, is the motion premature?  Many courts have concluded that a motion to strike class allegations raises issues that should be addressed in the context of a motion to certify the class.

And second, does the Motion to Strike meet the high standard that courts have articulated and applied in deciding such motions before a motion to certify the class is made?  If the Court concludes that no matter what the evidence shows, a nationwide class cannot be certified here as a matter of law, then, as other courts have found in such circumstances, the class allegations in the Complaint should be modified or stricken.  But if the law would permit the certification of a class, for some or all of the relief that Ms. Golden seeks, then the question of certification remains part of the picture, to be addressed anew by the Court on a motion to certify a class.

As part of that inquiry, the Court must address two questions, and they are interrelated.  One is whether this Court has the subject matter jurisdiction to consider whether a nationwide class can be certified.  And the other is whether this Court has the jurisdiction to consider the entry of any remedy, allowing some or all of the relief that is sought on behalf of a nationwide class.  That is, as Discover urges, even where the law permits the Court to consider the certification of a nationwide class, then the question remains as to whether any remedy can be provided.  If the Court plainly does not have the jurisdiction to enter a classwide remedy of any type on behalf of a nationwide class, no matter what the law provides or the evidence shows, then the class allegations in the Complaint should be modified or stricken.  But here again, if the Court has the jurisdiction to consider some or all of the relief that is sought on behalf of a

nationwide class, then the class allegations should remain and the question of certification should be addressed by the parties and the Court in the context of a motion to certify a class.

The Court considers these questions in turn.

### *Whether Discover's Motion To Strike the Class Allegations Is Premature*

The first question to be addressed on this Motion to Strike is whether it is time to consider this matter at all – that is, is Discover's Motion to Strike premature?  Should these issues be decided now, or should they be deferred to the consideration of a motion to certify a class?

At the outset, it is worth noting that Federal Rule of Civil Procedure 23, made applicable to adversary proceedings by Bankruptcy Rule 7023, states that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."  Fed. R. Civ. P. 23(c)(1)(A).  That is, as a threshold matter, the question of whether an action should be permitted to proceed as a certified class should be answered sooner, not later, in a case, and as soon as is "practicable."  Of course, the typical tool to accomplish this is a motion to certify a class under Rule 23, not a motion to strike class allegations.  And here, class discovery has not been completed and a motion to certify the class has not been made.

But another path to address whether a putative class action should be permitted to proceed in that form is a motion to strike the class allegations from the complaint.  Courts regularly observe that a motion to strike allegations of any type from a complaint under Rule 12(f) is "rarely grant[ed]."  *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 447 (E.D.N.Y. 2015) (citing cases).

And when such motions are directed to class allegations, they raise additional issues:

> "A motion to strike class allegations under Rule 12(f) is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification."

*Belfiore*, 94 F. Supp. 3d at 447 (quoting *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 404 (W.D.N.Y. 2010)).  *See Greene*, 262 F. Supp. 3d at 52 (stating that "motions to strike under Rule 12(f) are rarely successful").  Instead, "courts in this Circuit have repeatedly held [that] 'a determination of whether the Rule 23 requirements are met is more properly deferred to the class certification stage, when a more complete factual record can aid the Court in making this determination.'"  *Greene*, 262 F. Supp. 3d at 79 (internal quotation and citations omitted).

At the same time, courts agree that "the Court may consider a motion to strike class allegations where it is clear that the putative class action claim will not proceed and/or the motion to strike 'addresses issues separate and apart from issues that will be decided on a class certification motion.'"  *Bank v. Creditguard of Am.*, 2019 WL 1316966 at *4 (E.D.N.Y. Mar. 22, 2019) (quoting *Chen-Oster*, 877 F. Supp. 2d at 117).  That is, "[t]o succeed on a motion to strike class allegations, a defendant must 'demonstrate from the face of the complaint that it would be impossible to certify the alleged class regardless of the facts the plaintiffs may be able to obtain during discovery.'"  *Greene*, 262 F. Supp. 3d at 52 (quoting *Mayfield v. Asta Funding*, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015)).  If that cannot be shown, then the motion is untimely at best, and perhaps unfounded.

Discover argues that this issue is ripe for adjudication even before the parties have engaged in any discovery because "[t]he jurisdictional limitation on the Court's ability to entertain [Ms. Golden's] class allegations is certainly an issue 'separate and apart from the issues that' the Court would consider on a class-certification motion."  Def's Mem. at 24 (citing

*Greene*, 262 F. Supp. 3d at 53).  Ms. Golden responds that exactly the opposite situation is present, and that the question of whether this Court should entertain a nationwide class and thus enforce other courts' discharge orders is not a question of jurisdiction but of comity.

In order to determine whether the Motion to Strike addresses matters that are distinct from the issues to be decided on a class certification motion, this Court looks to the criteria for the certification of a class under Rule 23.  Rule 23(a) provides that an action may be maintained as a class action "only if":

(1)     the class is so numerous that joinder of all members is impracticable;
(2)     there are questions of law or fact common to the class;
(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

As to numerosity, the Motion to Strike does not address how many putative class members there may be, either within this District or nationally, and similarly does not address whether the size of the class is so large that the joinder of all members as individual plaintiffs would be impracticable.  Instead, Discover argues, in substance, that this Court lacks jurisdiction to adjudicate another court's discharge order.  That is, the Motion to Strike addresses matters that are separate and distinct from this inquiry.

As to whether there are questions of law or fact common to the class that make the claims appropriate for class treatment, a closer question is presented.  In the Motion to Strike, Discover argues that this Court lacks jurisdiction to consider a nationwide class, or any class that includes debtors who received a bankruptcy discharge outside of this District.  To be sure, this would amount to a legal defense that would be common to the claims of those putative class members.

But the absence of jurisdiction, whether subject matter or otherwise, is a very particular kind of defense.  It is well established that the question of jurisdiction should be addressed as early in a proceeding as possible.  *Key Mechanical Inc. v. BDC 56 LLC* (*In re BDC 56 LLC*), 330 F.3d 111, 118 (2d Cir. 2003) (the question of the bankruptcy court's subject matter jurisdiction "is a threshold determination that should be made at the earliest possible stage of the proceedings").  In this context, it is also a question of law.  As the court found in *In re Haynes*, "[w]hether the Court has subject matter jurisdiction over a nationwide class action to remedy alleged widespread breaches of debtors' discharges under Section 524(a) of the Bankruptcy Code is a question of law; therefore, extrinsic facts are not relevant."  *In re Haynes*, 2014 WL 3608891, at *2.  That is, in this context, the Motion to Strike raises matters that are both suitable and ripe for adjudication at this time.

The same is true for typicality, the third consideration under Rule 23.  Rule 23(a)(3) calls for the plaintiff to show that her claims or defenses are "typical of the claims or defense of the class" in order for a class to be certified.  This ensures that the named representative's claim and the claims of the class "'are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'"  *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1986)).

And here again, Discover's Motion to Strike does not address whether this interrelationship is present, or whether Ms. Golden as the putative class representative has claims or defenses that are atypical from those of other members of the alleged class – except perhaps as to the question of the defense of the lack of jurisdiction to enter any remedy for those class members who received their bankruptcy discharges from outside this District.  This is, again, a very particular type of defense, and one that should be addressed "at the earliest possible stage of

the proceedings." *In re BDC 56 LLC*, 330 F.3d at 118.  That is, and here too, the Motion to Strike raises issues that are separate from the typicality inquiry, and that can be addressed at this time.

Finally, as to whether "the representative parties will fairly and adequately protect the interests of the class," the record does not indicate, or even suggest, that the Motion to Strike calls into question the adequacy of the putative class plaintiff to serve as a class representative. *See* Fed. R. Civ. P. 23(a)(4).  Instead, the Motion to Strike calls for this Court to decide whether it may consider the question of certification of a nationwide class, and the entry of any nationwide class remedy.  And if the Court concludes that it lacks the subject matter jurisdiction necessary even to consider that question, or the jurisdiction to enter any remedy on a nationwide class basis, then, Discover argues, the nationwide class allegations should be stricken from the Complaint.

In sum, and as a threshold matter, the Court concludes that the issues presented by this Motion to Strike are "'separate and apart from issues that will be decided on a class certification motion.'"  *Bank*, 2019 WL 1316966 at *4 (quoting *Chen-Oster*, 877 F. Supp. 2d at 117).  The Court also concludes that the issues raise questions of law.  And the Court notes that Rule 23 states that the question of certification should be addressed at "an early practicable time after a person sues or is sued as a class representative."  Fed. R. Civ. P. 23(c)(1)(A).  For these reasons, and based on the entire record, the Court concludes that Discover's Motion to Strike is not premature, and may be considered at this time.

### *Whether Discover Has Shown that Ms. Golden's Class Allegations Should Be Stricken with Prejudice*

The next question to be addressed on this Motion to Strike is whether Discover has shown that a nationwide class cannot be certified by this Court as a matter of law – that is, that it

would be "impossible to certify the alleged class" because, in substance, this Court lacks the jurisdiction to direct any relief for a class member that received a discharge outside of this District.  *Greene,* 262 F. Supp. 3d at 52.

Discover argues that this Court lacks jurisdiction to adjudicate a discharge injunction violation claim predicated on a discharge order that was not entered in this District.  Notably, Discover does not dispute that this Court has subject matter jurisdiction to consider the certification of a nationwide class.  This Court reached that conclusion as well, in *Ajasa v. Wells Fargo Bank, N.A.* (*In re Ajasa*), 627 B.R. 6 (Bankr. E.D.N.Y. 2021).  Instead, it argues that this Court should follow the appellate and lower court decisions both within and outside this Circuit that, Discover states, have concluded that the power to enforce the statutory discharge injunction lies only in the particular bankruptcy court or district that issued the debtor's discharge, and strike Ms. Golden's allegations that she represents a putative nationwide class.

Ms. Golden responds that there can be no doubt that a bankruptcy court has the subject matter jurisdiction to consider a discharge injunction violation claim, and equally plainly, that a bankruptcy court may entertain a class action.  For these reasons alone, she asserts, Discover's Motion to Strike should be denied.

Ms. Golden also argues that, as the bankruptcy court found in *In re Haynes*, a discharge is "fundamentally different from other specific, judge-crafted injunctions or orders," and points to cases within and outside the Second Circuit that have reached the same conclusion.  Plf's Opp. at 8.  *See* Plf's Opp. at 6-7 (citing cases).  She points to nationwide classes that have been certified within and outside this Circuit for alleged violations of the discharge injunction, including by the bankruptcy court in *In re Haynes*, and urges the Court to follow the same

reasoning in denying Discover's request here.  And she describes this as "a matter of comity not a question of jurisdiction."  Plf's Opp. at 6 (citing *Gray*, 985 F. Supp. at 632-34).

As a starting point, and as the Supreme Court has observed, there can be no doubt that the court that issues an injunction has the authority to enforce it.  As the Court stated, "[s]anctions for violations of an injunction . . . are generally administered by the court that issued the injunction."  *Thomas v. General Motors Corp.*, 522 U.S. 222, 236 (1998).  *See In re Debs,* 158 U.S. 564, 594 (1895) (stating that "the power of a court to make an order carries with it the equal power to punish for a disobedience of that order.").  And as the Second Circuit has found, "[v]iolation of an injunctive order is cognizable in the court which issued the injunction, regardless of where the violation occurred."  *Stiller v. Hardman,* 324 F.2d 626, 628 (2d Cir. 1963).  But as noted, and as this Court found in *In re Ajasa*, this is a starting point, and does not answer the questions of whether the issuing court may also entertain a request for *broader* relief, or whether *only* the issuing court may determine whether a violation has occurred.  *See In re Ajasa*, 627 B.R. at 23.

One piece of this picture is the nature of the particular "injunction" at issue in this action.  The discharge injunction is a statutory injunction, and a product of the Bankruptcy Code itself.  It is created by Bankruptcy Code Section 524(a), which states that it "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor."  11 U.S.C. § 524(a)(2).  As the bankruptcy court explained in *In re Haynes*, "the bankruptcy discharge order is a form, a national form, which is issued in every case when there is, in fact, a discharge.  By statute, in [Section] 524(a)(2), it operates as an injunction . . . . It is not a handcrafted order."  *In re Haynes*, 2014 WL 3608891, at *8.  To the same effect, the court observed, "[t]here is . . . a

fundamental difference between the normal injunction issued by a court after considering the factors required to be applied in issuing an injunction order and the injunction created by Congress in [Bankruptcy Code] Section 524(a) to support the discharge under Section 727." *Id. See Bessette*, 230 F.3d at 445-46 (holding that "when dealing, as here, with violation of a purely statutory order," such as the discharge injunction imposed by Section 524, it is not necessary to return to "the court that issued the original discharge order"). *See also In re Ajasa*, 627 B.R. at 23.

Another piece of the picture is the source of the bankruptcy court's authority to enforce its own orders and, more generally, to enforce the provisions of the Bankruptcy Code, including the discharge injunction. One source of federal court authority is the All Writs Act. The All Writs Act states that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). And some courts have looked to that Act to conclude that only the court that issued a debtor's bankruptcy discharge should have the power to enforce that injunction. *See In re Ajasa*, 627 B.R. at 23.

Discover points to the Eleventh Circuit's decision in *Alderwoods* and other decisions, and argues that following that court's reasoning, "this Court lacks jurisdiction over claims requiring the interpretation and enforcement of discharge orders issued outside of the Eastern District of New York." Def's Mem. at 19, 22. *See* Def's Reply at 3 (citing cases).

In *Alderwoods*, the court addresses whether an alleged contempt of a Chapter 11 plan confirmation order entered in the District of Delaware could be addressed in the bankruptcy court in the Southern District of Florida:

> [T]he court that enters an injunctive order retains jurisdiction to enforce its order. In this respect, a bankruptcy court is no different than any other federal court,

> which possesses the inherent power to sanction contempt of its orders . . . . The bankruptcy court that confirms a reorganization plan thus enters an injunctive order – the confirmation order, . . . – the violation of which it can sanction.

*Alderwoods*, 682 F.3d at 970 (citations omitted).  And the court separately noted that "the discharge injunction itself is like an All Writs Act injunction issued 'in aid of' a court's jurisdiction . . . in that the discharge injunction is 'in aid of' the purpose of the Bankruptcy Code."  *Alderwoods*, 682 F.3d at 972 n.24 (quoting 28 U.S.C. § 1651).

But there is an additional source of federal court authority available under the Bankruptcy Code, distinct from the All Writs Act, in the form of Section 105(a).  Section 105(a) provides that the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  And these "provisions of this title" include, of course, the statutory discharge injunction that is set forth in Bankruptcy Code Section 524(a).

Here again, the bankruptcy court's decision in *In re Haynes* provides guidance.  Considering first the All Writs Act, the court observed that "[v]ery clearly, that statute is court-specific, referring to 'their respective jurisdictions,' or the respective jurisdictions of the individual courts whose orders are to be enforced."  *In re Haynes*, 2014 WL 3608891, at *8.

By contrast, Section 105(a) "is quite different":

> Although modeled on the All Writs Act, . . . [Section 105] does not refer to aiding the Court's own jurisdiction.  . . . the legislative history of this section, in H.R. Rep. 95-595, states that, among other things, Section 105 is intended to "cover any powers traditionally exercised by a bankruptcy court that are *not* encompassed by the all writs statute."  (Emphasis added.)  The statutes are different, in other words.

*In re Haynes*, 2014 WL 3608891, at *8.

The court continued:

> I believe it is a mistake to rely upon All Writs Act cases to hold that a bankruptcy court has power under the applicable statute only to enforce its own orders, as opposed to the Bankruptcy Code generally and Sections 524(a) and 727 . . . in particular.

*Id*. That is, the authority granted to bankruptcy courts by Section 105 is – explicitly and by design – broader than the authority granted to federal courts in the All Writs Act. *See In re Ajasa*, 627 B.R. at 24.

A third piece of the picture is the source of the Court's jurisdiction, including its subject matter jurisdiction, here. Discover argues that "every circuit court of appeals to have considered the issue has concluded that the only adjudicatory body able to interpret and enforce a debtor's discharge order is the court that issued the order." Def's Reply at 2. *See* Def's Reply at 2-4 (citing cases). Here, the cause of action arises under the Bankruptcy Code, and specifically, under Bankruptcy Code Sections 727, 524(a)(2), and 105(a). As a consequence, for purposes of this adversary proceeding, Judiciary Code Section 1334(b) is the source of this Court's subject matter jurisdiction, because the claim is a "civil proceeding[] arising under title 11." 28 U.S.C. § 1334(b). Indeed, as the court observed in *In re Haynes*, "there [are] few matters as 'core' to the basic function of the bankruptcy courts as the enforcement of the discharge under Sections 524 and 727 of the Bankruptcy Code." *In re Haynes*, 2014 WL 3608891, at *7.

At the outset, the Court considers whether it has subject matter jurisdiction to consider Ms. Golden's claims, and if so, whether this Court's subject matter jurisdiction is somehow limited by her request to proceed as representative of a nationwide class for violation of the discharge injunction. Even though the Court's subject matter jurisdiction to proceed is not contested by Discover, this is the starting point for the consideration of the questions raised by the Motion to Strike because, among other reasons, the questions of subject matter jurisdiction and jurisdiction to grant relief are both related and intertwined. And if this Court lacks the

subject matter jurisdiction to consider Ms. Golden's request to serve as a representative of a nationwide class, then her nationwide class allegations should be stricken.

It is axiomatic that this Court has subject matter jurisdiction to consider the discharge injunction violation claims of Ms. Golden as the named plaintiff, who filed a Chapter 7 bankruptcy case in this District, because that is a core matter.  And as Ms. Golden notes, it is equally clear that the Court has the authority to entertain a request to certify an action as a class action.  Class actions are permitted by Federal Rule 23, and Federal Rule 23 is made applicable to bankruptcy adversary proceedings by Bankruptcy Rule 7023.  That is, neither Bankruptcy Rule 7023 nor Federal Rule 23 takes away from this Court's core jurisdiction to consider alleged discharge violation claims.  *See In re Ajasa*, 627 B.R. at 25.

Bankruptcy courts have certified class actions, including nationwide class actions, to address a range of core bankruptcy claims in several circuits.  And in these cases, the class, as certified, extended outside of the bankruptcy court's home district, including to the extent of certification of a nationwide class.  For example, in *Sheffield v. HomeSide Lending, Inc.* (*In re Sheffield*), 281 B.R. 24 (Bankr. S.D. Ala. 2000), the bankruptcy court certified a nationwide class with respect to claims arising from a creditor's failure to disclose post-petition, pre-confirmation attorney fees in its proofs of claim.  *See Noletto v. NationsBanc Mortg. Corp.* (*In re Noletto*), 281 B.R. 36 (Bankr. S.D. Ala. 2000) (same); *Dean v. First Union Mortg. Corp.* (*In re Harris*), 280 B.R. 876 (Bankr. S.D. Ala. 2001) (same).

Bankruptcy courts have also noted, in different contexts, that in the appropriate circumstances, the certification of a nationwide class may be permitted, particularly when the relief sought is not solely *in rem* in nature.  For example, in *Chiang v. Neilson* (*In re Death Row Records, Inc.*), 2012 WL 952292 (B.A.P. 9th Cir. Mar. 21, 2012), the Ninth Circuit Bankruptcy

Appellate Panel permitted certification of a nationwide class as to "turnover, declaratory and injunctive relief claims" noting that they "are not solely *in rem* claims." *In re Death Row Records, Inc.*, 2012 WL 952292, at *12.

And in *In re Krause*, the bankruptcy court observed:

> [Section] 1334(e) must be read narrowly to limit the 'home court' exclusive jurisdiction of bankruptcy courts strictly to *in rem* matters involving property of the debtor or property of the estate and not as a restriction on nationwide jurisdiction over claims for violation of provisions of the Code, other federal statutory provisions, or other remedies that might be available to debtors and trustees.

*In re Krause*, 414 B.R. at 255-56.

Other courts are in accord. *See, e.g., Kerney v. Capital One Fin. Corp. (In re Sims)*, 278 B.R. 457, 486 (Bankr. E.D. Tenn. 2002) (on a motion to dismiss, concluding that "the better reasoned view is that there is bankruptcy subject matter jurisdiction over class action claims invoking substantive bankruptcy rights"); *Bank United v. Manley*, 273 B.R. 229, 244-45 (N.D. Ala. 2001) (affirming the denial of a motion to dismiss a putative nationwide class action and noting that "the idea that statute might preclude a bankruptcy court from adjudicating an issue based solely upon where the issue is filed suggest questions of proper venue, as opposed to subject matter jurisdiction").

And courts have similarly concluded that the bankruptcy court's subject matter jurisdiction is adequate to permit the consideration of whether a nationwide class should be certified. For example, as one court found in denying a motion to dismiss a putative nationwide class action based on the defendant's alleged practice of misallocating payments and collecting unauthorized fees and costs, "[Judiciary Code Section] 1334(b) grants subject matter jurisdiction over any debtor claims that fall within the court's 'related to,' 'arising in,' or 'arising under'

39

jurisdiction, regardless of where the claimant's bankruptcy petition was filed." *Cano v. GMAC Mortg. Corp.* (*In re Cano*)*,* 410 B.R. 506, 551 (Bankr. S.D. Tex. 2009).

To be sure, in many of these nationwide class actions, the relief sought did not necessarily call for the court to address a discharge order entered outside of its district. Instead, these cases addressed other matters that are fundamental to the bankruptcy system, including the disclosure of fees in a proof of claim and other alleged violations of the Bankruptcy Code and other statutes. But in each circumstance, the court concluded that a nationwide class was both possible and appropriate. As the district court concluded in *Bank United*:

> The bulk of this opinion demonstrates why the case law and applicable statutes do not preclude the bankruptcy court from asserting subject matter jurisdiction over the putative [nationwide] class claims. On a more affirmative level, the court believes that this conclusion advances the goals and purpose of the class action mechanism. Class actions promote efficiency and economy in litigation. Their design permits numerous parties to collectively litigate claims that might be uneconomical to litigate individually.

*Bank United*, 273 B.R. at 249-50.

To the same effect, as the Fifth Circuit noted, "[c]lass actions promote efficiency and economy in litigation . . . [t]hese principles are no less compelling in the bankruptcy context." *In re Wilborn*, 609 F.3d at 754 (internal citation omitted). And as the court observed, "if bankruptcy court jurisdiction is not permitted over a class action of debtors, Rule 7023 is virtually read out of the rules. This would ascribe to Congress the intent to categorically foreclose multi-debtor class actions arising under the Bankruptcy Code without a clear indication of such intent." *In re Wilborn*, 609 F.3d at 754 (citing *Bank United*, 273 B.R. at 250; *Tate v. NationsBanc Mortg. Corp.* (*In re Tate*), 253 B.R. 653, 664 (Bankr. W.D.N.C. 2000)).

Courts have similarly recognized that the jurisdiction to enter a nationwide remedy is part of the court's jurisdiction over the putative class. As another court observed in denying a motion

to dismiss a putative nationwide class action to enforce the Section 524 discharge injunction, "[t]he Court has the power to provide all of the relief requested." *Vick v. NCO Fin. Sys., Inc.*, 2010 WL 1330637, at *4 (E.D. Tex. March 15, 2010), *report and recommendation adopted*, 2010 WL 1328830 (E.D. Tex. Mar. 30, 2010). *See, e.g., Rojas v. Citi Corp Trust Bank FSB (In re Rojas*), 2009 WL 2496807 at *10 (Bankr. S.D. Tex. Aug. 12, 2009) (denying motion to dismiss putative nationwide class action based on defendant's alleged practice of filing false proofs of claims and rejecting argument that the bankruptcy court lacks subject matter jurisdiction to consider a nationwide class).

And finally, nationwide settlements of class actions asserting discharge injunction violations have been approved by bankruptcy and district courts in several cases within the Second Circuit. In such circumstances, again, the court necessarily concluded that it could enter an order that, in effect, provided for relief outside of its own district, including with respect to an asserted violation of a discharge order entered in another district by another court. *See Anderson v. Capital One Bank (USA), N.A.,* 19-cv-03981-NSR, at ECF No. 20 (S.D.N.Y. Sept. 11, 2019); *Anderson v. Capital One Bank (USA), N.A.,* 15-08342-RDD, at ECF No. 99 (Bankr. S.D.N.Y. Jan. 7, 2021); *Haynes v. Chase Bank U.S.A., N.A.*, 18-cv-03307-VB, at ECF No. 19 (S.D.N.Y. Aug. 24, 2018); *Haynes v. Chase Bank U.S.A., N.A.*, 13-08370-RDD, at ECF No. 133 (Bankr. S.D.N.Y. Sept. 27, 2018); *Echevarria v. Bank of America Corp.*, 17-cv-08026-VB, at ECF No. 23 (S.D.N.Y. Mar. 14, 2018); *Echevarria v. Bank of America Corp.*, 14-08216-RDD, at ECF No. 121 (Bankr. S.D.N.Y. Mar. 15, 2018). While each of these cases reached a consensual outcome, that consensus cannot create subject matter jurisdiction, or any other type of jurisdiction including the jurisdiction to enter a remedy, where it is otherwise lacking. As the Second Circuit

has observed, "[j]urisdiction cannot be created by the consent of the parties." *New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012) (internal citations omitted).

That is, in each of these nationwide class actions entertained by the bankruptcy and district courts, the court exercised jurisdiction over discharge orders entered by other courts in other districts around the country. Indeed, it may be that debtors with bankruptcy cases filed and even pending in this District were part of the classes in those cases. And to be sure, this Court's own jurisdiction, and every other bankruptcy court's jurisdiction in which a class member received a discharge, in those same cases was not diminished or affected by those determinations. To the contrary, the integrity of this Court's orders, and every bankruptcy court's orders, is *enhanced*, not diminished, when a violation of that order is addressed. The same could be said of the integrity of the nationwide bankruptcy system.

Viewed another way, this Court's subject matter jurisdiction to consider Ms. Golden's claims, including her request to proceed as the class representative in a Rule 23 class, and this Court's jurisdiction to enter a remedy in this case, should not be limited by the scope of that request – including a request to proceed as a nationwide class. Nor is it limited by any shortcoming in this Court's jurisdiction to consider, and if appropriate to enter, a classwide remedy. If Ms. Golden meets her burden on a motion to certify a class, then she will prevail – and if she does not, then a class will not be certified.

Next, and alternatively, the Court considers whether it has jurisdiction – both subject matter jurisdiction and jurisdiction to enter a classwide remedy – to consider Ms. Golden's request to certify a nationwide class in light of the cases that have found that "claims for contempt may be heard only by the court that issued the underlying order." Def's Reply at 4. Discover argues that the basis for enforcing the discharge under Bankruptcy Code Sections

524(a)(2) and 727 is the individual court's discharge order, and only the issuing court has the power to enforce that order. And this, it argues, means that this Court cannot adjudicate claims arising from other courts' discharge orders.

Discover argues that a court's subject matter jurisdiction can be constitutionally limited on "'threshold, non-merits' grounds, such as the inability to enforce another court's order." Def's Reply at 13 (citing *Alderwoods*, 682 F.3d at 970). And it argues that the distinction between a judge-crafted order and the statutory nature of the discharge injunction does not affect this limitation on the Court's jurisdiction.

This Court disagrees, for several reasons.

At the outset, the statutory discharge injunction that is found in the Bankruptcy Code is a standard, and standardized, component of a successful Chapter 7 bankruptcy case. It is created by the Bankruptcy Code, and implemented by the entry on the case docket of an official form. In particular, the discharge of a debtor in a Chapter 7 bankruptcy case is generally accomplished by the entry of Official Bankruptcy Form B 318. This official form is approved by the Judicial Conference of the United States, and must be used under Bankruptcy Rule 9009. *See* Official Bankruptcy Form Number B 318. And it may be viewed as a central component of the national – and Constitutionally uniform – bankruptcy system.

This uniformity is broadly recognized both in case administration and in practice. This Court is not aware of an indication in any reported case that a bankruptcy court tailors that statutory discharge injunction to the circumstances of a particular case, or that one bankruptcy court or district as opposed to another has any special expertise in interpreting the text and terms of the statute or crafting a form of order. As the court found in *In re Haynes*, "[t]here is . . . a fundamental difference between the normal injunction issued by a court after considering the

factors required to be applied in issuing an injunction order and the injunction created by

Congress in Section 524(a) to support the discharge." *In re Haynes*, 2014 WL 3608891, at *8.

The cases cited by Discover that arise in the context of motions to compel arbitration,

including the Second Circuit's decisions in *In re Anderson* and *In re Belton*, do not require a

different result. Discover states that in *In re Anderson*, the Second Circuit "noted that 'the

bankruptcy court retains a unique expertise in interpreting its own injunctions and determining

when they have been violated' and that 'Congress afforded the bankruptcy courts wide latitude to

enforce their own orders.'" Def's Reply at 9 (quoting *In re Anderson*, 884 F.3d at 390-91). And

it argues that in *In re Belton*, the court "reasoned that, if a bankruptcy court's interest in its

discharge order was so great as to make an arbitration agreement unenforceable, that same

interest required that discharge-related claims also be addressed by the court that issued the

order." Def's Reply at 9.

But it is worth noting the context of the Second Circuit's decision, as the question before

the court provides the framework for understanding the answer that the court provides in its

decision. In *In re Anderson*, the defendants sought to compel arbitration of asserted discharge

injunction violation claims. And there, the court concluded that it would undermine the goals

and objectives of the Bankruptcy Code, and more generally, the bankruptcy system, for such a

fundamental question to be answered not by a court, but by an arbitrator.

As the Second Circuit found:

> The successful discharge of debt is not merely important to the Bankruptcy Code,
> it is its principal goal. An attempt to coerce debtors to pay a discharged debt is
> thus an attempt to under the effect of the discharge order and the bankruptcy
> proceeding itself . . . the issue strikes at the heart of the bankruptcy court's unique
> power to enforce its own orders.

*In re Anderson,* 884 F.3d at 386.

The Second Circuit also found that the stakes for the bankruptcy system were high indeed.  It stated that "arbitration of a claim based on an alleged violation of Section 542(a)(2) would 'seriously jeopardize a particular core bankruptcy proceeding.'"  *In re Anderson,* 884 F.3d at 389-90 (quoting *U.S. Lines, Inc. v. Am. Steamship Owners Mut. Prot. and Indem. Assoc., Inc.* (*In re U.S. Lines, Inc.*), 197 F.3d 631, 641 (2d Cir. 1999)).  And it noted that "[e]nforcement of the arbitration agreement in this case would interfere with the fresh start bankruptcy promises debtors, which would create an inherent conflict with the Code."  *In re Anderson,* 884 F.3d at 390.

And finally, the Second Circuit placed the issue in the context of bankruptcy courts and the bankruptcy system generally, not just the particular bankruptcy court where the debtor's discharge order was entered.  The court found that "enforcement of injunctions is a crucial pillar of the powers of *the bankruptcy courts* and central to the statutory scheme."  *In re Anderson,* 884 F.3d at 390 (emphasis added).  And it observed:

> Though the discharge injunction itself is statutory and thus a standard part of every bankruptcy proceeding, the bankruptcy court retains a unique expertise in interpreting its own injunctions and determining when they have been violated. Congress afforded *the bankruptcy courts* wide latitude to enforce their own orders, specifically granting these specialty courts the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.

*In re Anderson*, 884 F.3d at 390-91 (quoting 11 U.S.C. § 105(a)) (emphasis added).

That is, in *In re Anderson*, the Second Circuit identified several key aspects of the bankruptcy process, including the protection provided to a debtor by the statutory discharge injunction and the debtor's fresh start, and determined that remitting these issues to an arbitral forum, rather than a bankruptcy court, would "strike[] at the heart" of the bankruptcy process.  *In re Anderson*, 884 F.3d at 386.  And it addressed these issues in the context of bankruptcy courts

and the bankruptcy system, not solely a single bankruptcy court or district. The court did not address, and did not need to address, whether the issuing judge, or district, or circuit set the boundary for the bankruptcy court's jurisdiction in the matter before it.

Similarly, in *In re Belton*, the Second Circuit affirmed the district and bankruptcy court's conclusion that "the alleged violation of a bankruptcy court discharge order" is not an arbitrable dispute because, as the *Anderson* court found, "arbitration was in 'inherent conflict' with enforcement of a discharge injunction." *In re Belton*, 961 F.3d at 615 (quoting *In re Anderson*, 884 F.3d at 390). But there, as in *In re Anderson*, the issue before the court was not the scope of a bankruptcy court's subject matter jurisdiction over a national class. To be sure, the court stated that "we have not endeavored to address whether a nationwide class action is a permissible vehicle for adjudicating thousands of contempt proceedings, and neither our decision today nor *Anderson* should be read as a tacit endorsement of such." *Belton*, 961 F.3d at 617. And the court noted that it would "leave for another day the issue of class certification." *Belton*, 961 F.3d at 618.[2]

The reasoning in *In re Anderson* was echoed and expanded upon by another case addressed by Discover and Ms. Golden, the Fifth Circuit's decision in *In re Crocker*. There, the court "adopt[ed] the language of the Second Circuit that returning to the issuing bankruptcy court to enforce an injunction is required at least in order to uphold 'respect for judicial process.'" *In re Crocker,* 941 F.3d at 216 (quoting *In re Anderson,* 884 F.3d at 391). As the Fifth Circuit observed, "only the bankruptcy court issuing the discharge" has the authority "to enforce the injunction through contempt." *In re Crocker*, 941 F.3d at 215.

---

[2] Notably, in the Second Circuit's recent decision in *Homaidan v. Sallie Mae, Inc.*, the court noted that the adversary proceeding is "styled as a putative class action," and otherwise, did not address the issue. *Homaidan*, 2021 WL 2964217 at *2.

To be sure, and as Discover notes, in *In re Crocker*, "the Fifth Circuit held that the 'bankruptcy court erred in [finding] that it could address contempt for violations of injunctions arising from discharges by bankruptcy courts in other districts.'" Def's Mem. at 22 (quoting *In re Crocker,* 941 F.3d at 216-17). Ms. Golden responds that the Fifth Circuit's analysis is not persuasive here because, among other reasons, it arose in a different context than the Second Circuit's decision in *In re Anderson*, did not address the question of class certification, and overlooked or misconstrued certain of the Bankruptcy Rules and the Bankruptcy Code's legislative history.

But at least this much is clear. In *In re Anderson*, the Second Circuit addressed the question of a choice of forum as the choice between a bankruptcy court and the federal courts generally, on the one hand, and an arbitration proceeding, on the other. It was not a choice between the bankruptcy court or district in which the discharge was entered, as opposed to a different bankruptcy court. And in *In re Crocker*, the Fifth Circuit addressed a different question – "[m]ay a bankruptcy court other than the one that granted the discharge enforce the [discharge] injunction?" *In re Crocker*, 941 F.3d at 211. To be sure, the *Crocker* court found guidance in the Second Circuit's decision in *In re Anderson*. But that does not change the question that was before the court in *In re Anderson*, or the scope or consequences of the Second Circuit's ruling.

Two additional arguments have been cited by courts in addressing these issues, and are worthy of note. One argument is "premised upon the notion that the Court's exercise of jurisdiction over debtors other than the debtor before it, or, in some courts, the debtors in its district, will not lie because that determination does not affect the lead plaintiff's [bankruptcy] estate . . . and there is no 'related to' jurisdiction in respect of other debtor class members' claims

under [Judiciary Code] Section 1334(b)." *In re Haynes*, 2014 WL 3608891, at *6 (internal citations omitted).

This Court agrees that cases reaching this conclusion are "premised on a misreading of the statutory basis for bankruptcy jurisdiction:"

> While it is true that a substantial portion of bankruptcy jurisdiction is *in rem*, that is, jurisdiction over the debtor's estate wherever located, it is not the only basis for bankruptcy jurisdiction, which, under 28 U.S.C. Section 1334(b), extends to "all civil proceedings arising under title 11," including under 11 U.S.C. Sections 524 and 727. In fact, . . . these fundamental, if not *the* fundamental, provisions of the Bankruptcy Code have nothing to do with the debtor's estate or *in rem* jurisdiction. They have everything to do with prohibiting the collection of *in personam* debts that, before the bankruptcy discharge, were owed by the debtor.

*In re Haynes*, 2014 WL 3608891, at *6.

Simply put, these claims "arise under" the Bankruptcy Code, are separate and distinct from any *in rem* basis for the bankruptcy court's jurisdiction, and go to the heart of one of the fundamental protections of the bankruptcy system – that is, the debtor's discharge and opportunity for a fresh start. As the Second Circuit found in the context of an asserted class action, "where the putative class members are all allegedly victims of willful violations of the discharge injunction issued by the bankruptcy court there is a continuing disruption of the debtors' ability to obtain their fresh starts." *In re Anderson*, 884 F.2d at 391. And as this Court has recognized, "[o]ne of the fundamental principles of bankruptcy law is that a bankruptcy discharge enables a debtor to receive a 'fresh start.'" *McKenzie-Gilyard,* 388 B.R. at 480 (citing *Marrama,* 549 U.S. at 367).

And separately, some courts have concluded that a bankruptcy court cannot entertain a nationwide class action to address an alleged discharge injunction violation on jurisdictional grounds, based on Judiciary Code Section 1334(e) and the limitations of a court's *in rem* jurisdiction. This Section provides that "the district court in which a case under title 11 is

commenced or is pending shall have exclusive jurisdiction – (1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e)(1). *See, e.g., Williams v. Sears Roebuck and Co.(In re Williams)*, 244 B.R. 858, 866 (Bankr. S.D. Ga. 2000), *aff'd sub nom. Williams v. Sears Roebuck, Co.*, 34 F. App'x 967 (11th Cir. 2002) (observing that "[t]he function of § 1334(e) is clear – to insure that only one court administers the bankruptcy estate of a debtor" and that "[a] procedural rule such as Rule 23 authorizing class actions, of course, cannot be read as enlarging the limited jurisdictional grant of § 1334"); *Bessette,* 279 B.R. at 449 (limiting class to members within the District of Rhode Island, because "[w]hile this Court can issue contempt findings for persons or entities subject to an order of this Court, it cannot issue orders for parties not within its authority").

But here again, this argument misses the mark, and misconstrues the essential nature of the relief that is sought here.  Ms. Golden seeks, for herself and for the putative nationwide class, neither more nor less than the benefit of a bankruptcy discharge.  And under Bankruptcy Code Section 524(a), the discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt *as a personal liability of the debtor*."  11 U.S.C. § 524(a)(2) (emphasis added).  Her claims do not concern "property of the estate, as of the commencement of the case," or "property of the estate," as addressed by Judiciary Code Section 1334(e)(1).  As the bankruptcy court observed in *In re Haynes*, "these fundamental, if not *the* fundamental, provisions of the Bankruptcy Code have nothing to do with the debtor's estate or *in rem* jurisdiction.  They have everything to do with prohibiting the collection of *in personam* debts that, before the bankruptcy discharge, were owed by the debtor."  *In re Haynes*, 2014 WL 3608891, at *6.

Finally, the Court considers the Supreme Court's ruling in *Taggart*. In *Taggart*, the Supreme Court observed that "the statutes specifying that a discharge order 'operates as an injunction,' and that a court may issue any 'order' or 'judgment' that is 'necessary or appropriate' to 'carry out' other bankruptcy provisions, bring with them the 'old soil' that has long governed how courts enforce injunctions." *Taggart*, 139 S. Ct. at 1801 (quoting 11 U.S.C. § 524(a)(2) and § 105(a)). And it found that "as part of the 'old soil' they bring with them, the bankruptcy statutes incorporate the traditional standards in equity practice for determining when a party may be held in civil contempt for violating an injunction." *Taggart*, 139 S. Ct. at 1801. As the Supreme Court explained, this "old soil" is the source of "traditional standards" as to when a finding of civil contempt may lie, and leads to the conclusion that a court may hold a creditor in civil contempt for violating a debtor's discharge if there is "*no fair ground of doubt* as to whether the order barred the creditor's conduct." *Taggart*, 139 S. Ct. at 1799.

That is, *Taggart* addressed the nature of the creditor's conduct and the scope of the debtor's discharge, and held that a finding of civil contempt may issue only where the question of the creditor's violation is decisively answered in the affirmative – where there is "no fair ground of doubt" as to the existence of the violation. And the "old soil" informs the question of intent, not the question of whether a bankruptcy court has subject matter jurisdiction to decide whether to certify a nationwide class. While *Taggart* surely has a role to play in determining a creditor's liability, it simply does not address whether this question may be considered by a court solely in an individual debtor's case, or in a district-wide class, or, as here, in a putative nationwide class.

### Conclusion

Based on the entire record and for the reasons stated herein, the Court finds that Discover has not shown that Ms. Golden's allegations that she seeks to be certified as the representative of a putative nationwide class designation should be stricken from the Complaint.  The question of whether a nationwide class, or any class, should be certified in this action, for some or all of the relief that is sought, is reserved for another day, to be considered upon the making of a motion to certify a class by Ms. Golden.  For these reasons, Discover's Motion To Strike Class Allegations is denied.  An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**July 19, 2021**

**Elizabeth S. Stong**
**United States Bankruptcy Judge**